238 P.2d 941

**SANDERS v. BROWN.**
**No. 5379.**

Supreme Court of Arizona.
Dec. 17, 1951.

Rehearing Denied Jan. 16, 1952.

McDaniel, Franks & Powell, of Prescott, Jennings, Strouss, Salmon & Trask, and J. A. Riggins, Jr., all of Phoenix, for appellant.

Byrne & Bryne, of Prescott, for appellee.

UDALL, Chief Justice.

Howard I. Sanders, defendant below, has appealed from a judgment against him in the sum of $4,500.00, rendered by the court sitting without a jury. Plaintiff, William R. Brown, alleged that his injuries were directly and proximately caused by the negligence of defendant in maintaining a gravel pile on the driveway near his home and failing to warn him of it.

In this unique case there is no conflict in the evidence. The only witnesses were the plaintiff and the defendant and the latter's wife. The only issue is whether the trial court properly applied the law to the facts. The rule is well settled that we are

not bound by the conclusions of the trial court, but are at liberty to draw our own legal conclusions from the admitted facts. Maricopa County Water Conservation Dist. No. 1 v. Southwest Cotton Co., 39 Ariz. 65, 4 P.2d 369; Mountain States Tel. & Tel. Co. v. Sakrison, 71 Ariz. 219, 225 P.2d 707; Industrial Commission of Arizona v. J. & J. Const. Co., 72 Ariz. 139, 231 P.2d 762; In re Estate of Taylor, 56 Ariz. 211, 106 P.2d 492.

Since 1941 the parties have been engaged as equal partners in the credit jewelry business under the firm name of Brown's Credit Jewelers, operating stores in Flagstaff and Prescott, Arizona. Plaintiff is the manager of the Flagstaff store and defendant of the Prescott store. A very friendly relationship existed between the parties and for a number of years it had been the practice when visiting the respective stores to stay at the other's home rather than go to the hotels. This hospitality continued down to and including the date of trial.

Plaintiff and his wife left Flagstaff on Saturday, August 24, 1946, to go to Prescott on one of their periodic visits, arriving at defendant's residence about one-thirty Sunday morning where they spent the remainder of the night. Later that day the partners were driven by Mrs. Brown to their Prescott store where the men spent the afternoon discussing business affairs, returning about nine or nine-thirty, p. m. Monday morning, Mrs. Brown again driving the car, the partners went to the store.

That afternoon the partners accompanied by Mrs. Brown drove out to a recreational area some five miles north of Prescott. known as the "Gardens", arriving there about three o'clock. Defendant attended a meeting of the board of directors of the corporation which operated the area, while the plaintiff and his wife went into the bar or cocktail lounge and had a few drinks. According to plaintiff's own admission, from then until midnight he had about thirteen to fifteen "coke highs".

When the parties were ready to leave they were unable to locate the keys to their automobile and were driven to the Sanders' home by some friends. (Incidentally the keys were found later in the plaintiff's hip pocket). They started up the dark inclined driveway, Mrs. Brown walking in front and the men walking and talking together when the plaintiff walked into the gravel pile and fell breaking his leg in two places.

To better understand the situation it is essential to describe the premises. Defendant lived at 1603 Oregon Avenue, and the driveway runs from the street, along the west side of the house to the garage in the rear. This was an unsurfaced gravel drive about fifteen or twenty feet wide with a slight incline from the street. The garage was at the end of the driveway some little distance south of a gate leading to the rear entrance of the house. Parallel and immediately adjacent to the west footing of the house was a flower bed with a rock re-

taining wall and midway of the house on the east side of the driveway there was located a pile of gravel about eighteen inches high and four feet across. It was composed of what is called "coarse gravel", the largest rocks being about two or two and a half inches in diameter, and it did not interfere with the traffic on the drive. The usual and customary approach to the house was by means of this drive and plaintiff and his wife had never during their visits used the front entrance to the house.

It was testified that the gravel pile "was not hidden or in a depression or covered or obstructed in any way". A person with ordinary vision who cared to look could have seen it. While the plaintiff admitted he had normal vision he stoutly maintained that at no time prior to the accident did he see the gravel pile or even know of its existence, yet during the 48-hour period prior to the injury he had been in the front seat of the car four times when it was either driven in or backed out of this driveway.

Plaintiff gave a frank answer to the question propounded by counsel for the defendant as to his sobriety, "Yes, I was intoxicated". The defendant corroborated this statement and Mrs. Sanders testified that both men were intoxicated at the time of the accident.

▇▇▇ · Plaintiff alleged in the complaint filed August 23, 1948 that: "The injuries suffered by plaintiff as before stated, were directly and proximately caused by the negligence of defendant, (in failing to keep his said premises in a reasonably safe condition, for entry in and upon the same by plaintiff, upon the invitation of defendant.)"

During the trial the court permitted an amendment by striking out the words in parenthesis, above, leaving only a general allegation of negligence. Defendant assigns this as error, contending that he was thereby prejudiced in his defense. Defendant recognizes that amendments should be liberally allowed in the interest of justice and that it is within the discretion of the trial court under all the facts and circumstances of the case whether it should be permitted, but argues that there must be a limit beyond which it cannot go. The amendment allowed did not change the theory of the case, it was still an action for damages based upon the same injury caused by the alleged negligence of the defendant. He did not plead surprise or request a continuance due to the amendment. We cannot see how the defendant was prejudiced and we fail to find an abuse of discretion by the trial court. Cf. Palmer v. Apperson, 70 Ariz. 35, 215 P.2d 1020.

▇▇ The first issue to be decided is whether the plaintiff was a business invitee or a social guest *at the time of the accident.* Plaintiff maintains that he was a business invitee and the defendant contends that he was a mere social guest. Section 331 of the Restatement of the Law of Torts in-

cludes a social guest under the definition of a gratuitous licensee. The evidence is not in dispute and plaintiff testified that while his primary reasons for the trip was business, the visits at the Sanders home were primarily for pleasure. Plaintiff also testified that many times the business was discussed at the defendant's home but the important thing is his status at the time of the accident. Conceding that the partnership business was discussed and that plaintiff did have his moments when he was a business invitee, did this extend so as to cover him *at the time of the accident*? The rule is well settled that the status may change to a licensee after a reasonable time has expired to transact the business, or by going into another or unauthorized part of the premises. Western Truck Lines, Ltd. v. Du Vuall, 57 Ariz. 199, 122 P.2d 589; Southwest Cotton Co. v. Pope, 25 Ariz. 364, 218 P. 152; Napier v. First Congregational Church of Portland, 157 Or. 110, 70 P.2d 43; Section 343 of the Restatement of the Law of Torts.

■ Surely it cannot be seriously contended that when the accident occurred the plaintiff was in a condition to have been giving any grave thought to the business. It seems obvious to us that he was engaged in the pursuit of pleasure in no way connected with the partnership, thus bringing him squarely within the rule governing social guests. We hold that the trial court erred in its conclusion of law that he was an invitee, as the evidence shows that he was nothing more than a mere licensee or social guest.

■ Having concluded the plaintiff was a guest and not an invitee, our next problem is to determine what duty the defendant owed to him. The rule seems to be settled on this point that the owners of the premises owe no duty to the guest other than to refrain from knowingly letting him run upon a hidden peril or wantonly or wilfully causing him harm. Southwest Cotton Co. v. Pope, supra; Comeau v. Comeau, 285 Mass. 578, 189 N.E. 588, 92 A.L.R. 1002. The rule is well stated in 38 Am.Jur., Negligence, Section 117, as follows: "* * There is no duty on the part of the host to reconstruct or improve the premises for the purpose of making his house more convenient or more safe for those accepting his hospitality, gratuitously extended. The guest assumes the ordinary risks which attach to the premises. No exception is made to the rule because of the fact that the guest enters on the host's express invitation to enjoy his hospitality. * * * A better reason for the rule is that a host merely offers his premises for enjoyment by his guests with the same security that the host and the members of his family who reside with him have. However, the rule is that a host who knows of a concealed danger upon the premises is guilty of negligence if he permits the guest, unwarned of the peril, to come in contact therewith, and he may be-

held liable to the guest for an injury thus sustained."

Plaintiff contends that the gravel pile because of the darkness and his intoxication was a hidden danger and it was a breach of duty by the defendant for his failure to give a warning. The intoxication of the plaintiff and the darkness of the night are only circumstances to be taken into consideration on the question of whether a party is exercising due care for his own safety and well-being. They will not turn an otherwise open and visible object into a hidden danger. Section 343 of the Restatement of the Law of Torts. All the evidence concerning the gravel pile shows that it was open, visible and in no way obstructed from view. Plaintiff traveled this driveway four times previous to the accident (twice in broad daylight), yet claims that he did not see it or know of its existence. We think it is apparent that plaintiff either knew or reasonably should have known of the existence of the gravel pile. We hold that the trial court erred in its conclusion of law that the gravel pile was a hidden danger.

Conclusions of law three and four (c) hold that the defendant actively controlled and directed the plaintiff's course of walking into the pile of gravel and that the action of the defendant was positive in character and not merely negative. We have reviewed the record and the evidence carefully and fail to find anything to support them. Therefore we cannot sustain the court's conclusions in this matter.

Furthermore, if the plaintiff is correct as to his status on the premises, i. e., a business invitee, since the danger was obvious and reasonably apparent, the rule in Moore v. Southwestern Sash & Door Co., 71 Ariz. 418, 228 P.2d 993, would govern and he still could not recover as the defendant is not an insurer of either his business invitees or his guests.

We recognize that plaintiff sustained a grievous injury which caused much pain and suffering and placed a great financial burden upon him. The modest judgment entered would hardly more than care for out-of-pocket expenditures with practically no allowance for pain or suffering or permanent impairment of the limb. However this does not justify our sustaining a judgment which is contrary to law.

The judgment of the lower court is reversed with direction to enter judgment for the defendant.

STANFORD, PHELPS, DE CONCINI and LA PRADE, concur.