821 P.2d 220

**Walter Gilmore SHAW, Conservator of Stacie Ketchum, a minor child, Plaintiff–Appellant,**

v.

**Joseph PETERSEN and Deanne Petersen, his wife, Defendants– Appellees.**

**No. 1 CA–CV 89–386.**

Court of Appeals of Arizona, Division 1, Department E.

June 11, 1991.

Review Denied Dec. 17, 1991.

---

* A Judge of the Pima County Superior Court authorized and assigned to sit as a Judge on the Court of Appeals, Division Two, pursuant to

Arizona Supreme Court Order filed July 25, 1990.

Andrews, Marenda & Moseley, P.A. by Dale E. Marenda, Phoenix, for plaintiff-appellant.

Holloway & Thomas, P.C. by Benjamin C. Thomas, Phoenix, for defendants-appellees.

## OPINION

VOSS, Judge.

Plaintiff, the conservator of Stacie Ketchum, appeals from the summary judgment granted in favor of defendants Joseph and Deanne Petersen (the homeowners). Plaintiff brought this negligence claim on behalf of Stacie, a young child who was severely injured in the homeowners' backyard swimming pool. Plaintiff challenges the trial court's determination that, as a matter of law, the homeowners had no duty to protect Stacie from any danger that might befall her because of the pool. Finding both a duty and conflicting inferences from the facts on which reasonable jurors may disagree, we reverse.

## FACTS

In reviewing the trial court's grant of summary judgment, we view the facts in the light most favorable to the party against whom judgment was entered. *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985). The facts relevant to this matter are largely undisputed.

One evening, while 19 month old Stacie and her family were temporarily residing with the homeowners, her aunt and uncle, her parents noticed she was missing and began to look for her. After checking through the house, Stacie's father found her in the pool. Stacie was resuscitated, but she sustained severe permanent brain damage.

Classically, no one knows how Stacie got out of the house and into the pool. The backyard was fenced, but there was no fence around the pool itself. Access to the patio and pool area was through sliding glass arcadia doors in both the family room and master bedroom. According to Stacie's mother, Stacie could not open the arcadia doors. The family room door was found open after Stacie was discovered in the pool.

The homeowners filed a motion for summary judgment arguing, *inter alia*, that because Stacie and her parents were guests at the homeowners' residence, as a matter of law they had no duty to guard against any danger that the pool might have presented to Stacie. The trial court granted summary judgment, finding that the pool was not a hidden danger but was open and obvious, thus the homeowners had no duty to make the pool safe for Stacie, a social guest and licensee.

Plaintiff filed a motion for new trial. The court denied the motion, and plaintiff timely filed this appeal.

## DISCUSSION

Summary judgment is appropriate where "no reasonable juror could conclude by even a preponderance of evidence that [defendant] ... was ... actively responsible for the injury...." *Orme School v. Reeves*, 166 Ariz. 301, 802 P.2d 1000, 1010 (1990). Motions for summary judgment should not be denied "simply on the speculation that some slight doubt ..., some scintilla of evidence, or some dispute over

irrelevant or immaterial facts might blossom into a real controversy in the midst of trial." *Id.* Summary judgment is inappropriate, however, where the trial judge would be "required to pass on the credibility of witnesses with differing versions of material facts, ... required to weigh the quality of documentary or other evidence, and ... required to choose among competing or conflicting inferences." *Id.* Here, we do not believe the trial court was required to pass on the credibility of witnesses or weigh evidence in evaluating the motion for summary judgment. We do believe, however, that the trial court was required to choose among competing or conflicting inferences.

■ "[A] negligence action may be maintained only if there is a duty or obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Markowitz v. Az. Parks Board*, 146 Ariz 352, 354, 706 P.2d 364, 366 (1985). Further, there must be a breach of that duty, a causal connection between the breach and injury, and actual injury or damage. *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983), citing W. Prosser, *Handbook on the Law of Torts*, § 30 at 143 (4th ed. 1971).

■ The existence of a duty is decided by the court as a matter of law. *Markowitz*, 146 Ariz. at 356, 706 P.2d at 368. A duty exists if

the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff. If the answer is no, the defendant is not liable even though he may have acted negligently in light of the foreseeable risks.

*Id.* The threshold question then, is—was there a relationship between the homeowners and Stacie, such that the homeowners were under some obligation to prevent injury to Stacie?

■ The parties agree that Stacie was a social guest of the homeowners, thus she was a licensee under Arizona law. *Shannon v. Butler Homes, Inc.*, 102 Ariz. 312, 428 P.2d 990 (1967). Generally, a homeowner has the duty to warn a licensee of hidden peril and refrain from willfully causing a licensee harm. *Id.*

■ It is clear, then, that the homeowner owed Stacie a duty to exercise some care to prevent injury. The trial court, relying on the *Shannon* standard, held that the pool was open and obvious and since there were no allegations that the homeowners had willfully harmed Stacie, the plaintiffs "have failed to establish any duty owed which would provide a basis for actionable negligence." An evaluation of the trial court's ruling reveals two problems. First, having established the special relationship—duty—the court cannot negate the existence of that duty through a breach analysis. "We again point out that the existence of a duty is not to be confused with details of the standard of conduct." *Markowitz*, 146 Ariz. at 355, 706 P.2d at 367. Whether a reasonable person would believe a pool was an open and obvious hazard to a 19 month old child is a question that relates to the breach of duty, not its existence. *Id.* at 356, 706 P.2d at 368. (Whether a hazard is "open and obvious" is not relevant to determine the existence of duty, rather it is relevant to determining if the duty was breached.)

■ Second, the trial court failed to distinguish between the type of care that is required to protect an adult licensee and the care that is required to protect a child licensee. Our supreme court noted the distinction in *Shannon v. Butler Homes, Inc.* when it stated:

The characteristics of children are proper matters for consideration in determining what is ordinary care with respect to them, and there may be a duty to take precautions with respect to those of tender years which would not be necessary in the case of adults. *The duty is to exercise such care as a reasonable prudent person would exercise toward children under like circumstances.*

*Shannon*, 102 Ariz. at 317, 428 P.2d at 995. (Emphasis added.) The *Shannon* court held that whether a warning was adequate

depended on what a reasonable prudent person would do in like circumstances considering the ability of the child to appreciate the risk involved; thus, the adequacy of the warning would ordinarily be a question of fact for the jury. *Id.*

This court also considered the duty of a landowner to a child licensee in *Robles v. Severyn,* 19 Ariz.App. 61, 504 P.2d 1284 (1973). There, three-and-a-half-year-old Peter Robles was injured when a sharp palm frond penetrated his eye while he was playing on the Severyns' property as an invited guest. His guardian ad litem sued the Severyns alleging that the palm trees "had a misleading hidden and dangerous defect to a child of tender years, which danger defendants had specific knowledge of," and that it "constituted a hidden trap to children playing in the area." *Id.* at 62, 504 P.2d at 1285.

Because there was no claim of willful or wanton negligence, the *Robles* court considered whether the "hidden peril" doctrine applied to the hazard. The court found that the trees were neither hidden nor had a deceptive quality, and consequently that the Severyns had no duty to warn Peter. *Id.* Nevertheless, the court recognized that a peril, although not hidden to an adult, may be so unappreciated by a young child that it may constitute a hidden peril to the child. *Id.* at 64, 504 P.2d at 1287.

More recently, this court considered whether summary judgment was proper in an action against a landlord for injuries suffered by a child tenant who almost drowned in an unfenced pool on the rental property. In *McLeod v. Newcomer,* 163 Ariz. 6, 785 P.2d 575 (App.1989), the family of two-and-one-half year old Tyler McLeod rented a house with a backyard pool from Newcomer, Mr. McLeod's sister. The appeals court found that Tyler was a tenant. According to the court, Newcomer's duty "was to exercise such care as a reasonably prudent person would exercise toward children under similar circumstances, those circumstances being the presence of an unfenced pool in the backyard of a house rented to a family with small children." *Id.* at 9, 785 P.2d at 578. In determining

whether Newcomer breached this duty, the *McLeod* court held that whether the pool constituted an unreasonably dangerous condition to the child was a question of fact that must take into account all the relevant circumstances, including Newcomer's awareness of the child's age and the risk of the pool to the child. The court explained that this issue could not be determined as a matter of law because reasonable minds might disagree on Newcomer's liability. *Id.*

The *McLeod* court further stated that whether the unfenced pool constituted an open and obvious condition could not be resolved as a matter of law. It pointed out that the question was whether the condition and the danger were open and obvious *to the child,* not to the child's parents. *Id.* at 10, 785 P.2d at 579.

■ Following *McLeod* and the cases preceding it, we believe that whether the pool constituted a hidden peril to Stacie is a question which reasonable persons may well answer differently. To answer this question, the trier of fact must take into account such circumstances as the child's age and intelligence, the risk to the child and facts peculiar to the child which, in a case involving a pool, might include a history of swimming lessons or familiarity with bodies of water. If the trier of fact finds a hidden peril to the child, the fact-finder must then determine whether, considering the child's age and circumstances, a warning was required or, if a warning was given, whether it was adequate. As the *Shannon* court said, "[w]hat constitutes an adequate warning is dependent upon what a reasonable prudent man would do in like circumstances considering the capacity of the child to appreciate the full extent of the risk involved." *Shannon,* 102 Ariz. at 317, 428 P.2d at 995. The trier of fact could conclude that a reasonable prudent person would realize that it was impossible to adequately warn this child of the risk. Then the trier of fact must move to the other phase of duty to a child licensee and consider whether the homeowner failed to exercise reasonable care to make the dangerous condition—the pool—safe for the child.

■ The homeowners note that the *Robles* court held that the trial court properly determined that the trees were not a hidden peril because not all circumstances giving rise to a possible danger to a child create a fact question as to whether a hidden peril exists. If this were the case, the court stated, a landowner would have to childproof his property and take "precautions against every conceivable danger to which an irrepressible spirit of adventure may lead a child." *Robles*, 19 Ariz. App. at 64, 504 P.2d at 1287 quoting from 38 Am.Jur. *Negligence* § 147 at 813. While we agree that a homeowner is not required to warn a child about every tree, bush, fence, stair or anything else on the property that might cause some harm to the child, we believe that a pool does not fit this category. The dangers presented by pools to young children are well-documented in Arizona, where pools are common and child drownings and near-drownings occur with alarming frequency. Thus, while a palm tree may not be a hidden peril to a child as a matter of law, we cannot say the same for a backyard pool.

■ Alternatively, the homeowners contend that even if the pool was a hidden peril, they fulfilled their duty by making Stacie's parents aware of the pool and its dangers. The *McLeod* court responded to this argument by stating that the fact that the child's parents were aware of the risks involved in the backyard pool and may have been contributorily negligent does not eliminate the property owner's duty to the child. As the *McLeod* court said, "[q]uestions of contributory negligence are always jury questions and, more importantly, when a child is the plaintiff, the parents' negligence cannot be imputed to the child." *McLeod*, 163 Ariz. at 11, 785 P.2d at 580. Thus, a warning about the pool to Stacie's parents did not eliminate the homeowners' duty to Stacie.

As we previously stated in *McLeod*, "we do not hold that an internally unfenced swimming pool is or is not unreasonably dangerous as a matter of law. It is for the finder of fact to decide." *Id.* When all circumstances are considered, the trier of fact may or may not find that the pool was dangerous to Stacie, may or may not find that her parents assumed full responsibility for her safety, and may or may not find that the homeowners' conduct was reasonable under the circumstances. *See McLeod*, 163 Ariz. at 9, 785 P.2d at 578. Considering the circumstances of this case, these factors should properly be weighed by the jury, and should not be decided by the court on a motion for summary judgment.

We conclude that the trial court erred in granting summary judgment in favor of the homeowners and therefore reverse and remand for further proceedings.

CONTRERAS, J., concurs.

FIDEL, Judge, specially concurring:

Though I join my colleagues in reversing summary judgment, I write separately to comment (1) on the court's perpetuation of the categories of licensee and invitee and (2) on the status of hidden danger as a touchstone of a landowner's duty to licensees.

### I.

If the court were free to approach duty straightforwardly, it would simply pose—and affirmatively answer—two questions:

(1) Does one who occupies residential property owe *any* duty of care to guests with respect to dangers on the premises?

(2) Might a jury reasonably find that these defendants failed to act reasonably to avoid exposing a guest to a foreseeable and unreasonable risk of harm?

That approach, if taken here, would satisfy our supreme court's effort elsewhere in tort law to simplify the definition of duty:

'[D]uty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty [if it exists] is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk.

*Coburn v. City of Tucson*, 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984) (quoting W. Prosser & W. Keeton, *The Law of Torts*

§ 53 at 356 (5th ed. 1984)); *see also Rossell v. Volkswagen of America,* 147 Ariz. 160, 164–66, 709 P.2d 517, 521–23 (1985), *cert. denied,* 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986) (No duty issue arises in a passenger's case against an auto manufacturer: "In determining what is reasonable care for manufacturers, the plaintiff need only prove the defendant's conduct presented a foreseeable, unreasonable risk of harm.").

Unfortunately, simplification has not yet spread to the law of duty to social guests. Although Arizona law recognizes that a premises owner or possessor owes some duty to social guests, it does not yet formulate this duty simply as "to conform to the legal standard of reasonable conduct in the light of the apparent [i.e., foreseeable and unreasonable] risk." Instead, the law superimposes an archaic exercise in categorization as "invitee" and "licensee," consigns social guests to the lesser second category, and assigns them a reduced entitlement of care. As articulated by the supreme court in a 1967 case cited by my colleagues:

> The rule seems to be settled on this point that the owners of the premises owe no duty to the guest other than to refrain from knowingly letting him run upon a hidden peril or wantonly or wilfully causing him harm.

*Shannon v. Butler Homes, Inc.,* 102 Ariz. 312, 316, 428 P.2d 990, 994 (1967) (quoting *Sanders v. Brown,* 73 Ariz. 116, 120, 238 P.2d 941, 944 (1951)).

My colleagues reiterate this formulation of the general rule, then cite and apply an exception, also applied in *Shannon,* for child licensees: Because children may not fully appreciate the risk of a condition open to their perception, "[t]he duty is to exercise such care as a reasonable prudent person would exercise toward children under like circumstances." 102 Ariz. at 317, 428 P.2d at 995. Thus, by an extended route of generalization and exception, the court finds its way to where it might have started, escaping—though for children only—the categorical accretions of the law of licensees and imposing a simple duty to act reasonably in light of foreseeable, unreasonable risks.

The proliferation of subclassifications, exceptions, and fine gradations in the law of licensees led the United States Supreme Court more than thirty years ago to reject the licensee/invitee distinction as too complex and impractical for admiralty law. *See Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630–32, 79 S.Ct. 406, 409–11, 3 L.Ed.2d 550 (1959). Tracing the licensee/invitee categories to a bygone culture's "heritage of feudalism," the court attributed the confusion and conflict of the modern law of licensees to the efforts of modern courts to fashion exceptions in order "to do justice in an industrialized urban society." *Id.* at 630, 79 S.Ct. at 410. The court continued:

> Through this semantic morass the common law has moved, unevenly and with hesitation, towards 'imposing on owners and occupiers a single duty of reasonable care in all the circumstances.'
>
> For the admiralty law at this late date to import such conceptual distinctions would be foreign to its traditions of simplicity and practicality.

*Id.* at 631, 79 S.Ct. at 410 (citations omitted).

Many state courts have been similarly moved by considerations of simplicity and practicality to modify or abolish the categorical common law approach.[1] The Su-

---

1. Six jurisdictions have eliminated the distinction between licensees and invitees, but have retained trespassers as a separate classification. *See Poulin v. Colby College,* 402 A.2d 846, 851 (Me.1979); *Mounsey v. Ellard,* 363 Mass. 693, 707 & n. 7, 297 N.E.2d 43, 51–52 & n. 7 (1973); *Peterson v. Balach,* 294 Minn. 161, 164, 199 N.W.2d 639, 642 (1972); *O'Leary v. Coenen,* 251 N.W.2d 746, 751 (N.D.1977); *Hudson v. Gaitan,* 675 S.W.2d 699, 703 (Tenn.1984); *Antoniewicz v. Reszcynski,* 70 Wis.2d 836, 856–57, 236 N.W.2d 1, 11 (1975). Illinois has eliminated this distinction by statute. Ill.Ann.Stat. ch. 80, paras. 301–04 (Smith–Hurd 1987). The Maryland Supreme Court has stated that any change in the law with regard to trespassers is a legislative prerogative, *Murphy v. Baltimore Gas & Elec.,* 290 Md. 186, 195, 428 A.2d 459, 465 (1981), but has recently questioned the continuing usefulness of the distinction between licensees and invitees. *Wagner v. Doehring,* 315 Md. 97, 102 n. 3, 553 A.2d 684, 686 n. 3 (1989). Oklahoma, in a recent decision treating injury

preme Court of Tennessee, for example, recently concluded:

> that it is both illogical and unjust to continue to employ the common law rules distinguishing between 'licensees' and 'invitees' in determining the 'premises liability' of owners and occupiers of land for injuries sustained by visitors upon that land.
>
> [These] classifications ... are no longer determinative in this jurisdiction ...; the duty owed is one of reasonable care under all of the attendant circumstances, foreseeability of the presence of the visitor and the likelihood of harm to him being one of the principal factors.

*Hudson v. Gaitan,* 675 S.W.2d 699, 703 (Tenn.1984).

Considerations of simplicity, practicality, and fairness should be no less compelling to the Arizona courts. As the Supreme Court of California commented, one's "life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because [one] has come upon the land of another ... with permission but without a business purpose." *Rowland v. Christian,* 69 Cal.2d 108, 119, 443 P.2d 561, 568, 70 Cal. Rptr. 97, 104 (1968).

---

to a trespasser, has declined to depart from the common law rule of differing duty between trespassers and those on property with express or implied permission. *Lohrenz v. Lane,* 787 P.2d 1274, 1277 (Okla.1990).

Florida has redefined social guests as invitees, but has retained the separate category of licensees. *See Wood v. Camp,* 284 So.2d 691, 695 (Fla.1973). Connecticut has statutorily eliminated the distinction between business invitees and social guests. Conn.Gen.Stat.Ann. § 52-557a (1991).

Nine other jurisdictions have altogether rejected the approach of basing duty upon a plaintiff's status as licensee, invitee, or trespasser. *See Smith v. Arbaugh's Restaurant,* 469 F.2d 97, 105 (D.C.Cir.1972); *Webb v. City of Sitka,* 561 P.2d 731, 733 (Alaska 1977); *Rowland v. Christian,* 69 Cal.2d 108, 118–19, 443 P.2d 561, 568, 70 Cal.Rptr. 97, 104 (1968); *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 547, 489 P.2d 308, 314 (1971); *Pickard v. City of Honolulu,* 51 Haw. 134, 135, 452 P.2d 445, 446 (1969); *Cates v. Beauregard Electric Corp.,* 328 So.2d 367, 371 (La.1976); *Ouellette v. Blanchard,* 116 N.H. 552, 557, 364 A.2d 631, 634 (1976); *Basso v. Miller,* 40 N.Y.2d 233, 241, 352 N.E.2d 868, 872, 386

## II.

One consequence of maintaining the superannuated categories of licensee and invitee is the perpetuation of the "open and obvious rule" as a defining test of duty to licensees. That rule is the flip side of the hidden peril requirement. *See Hicks v. Superstition Mountain Post No. 9399, Veterans of Foreign Wars,* 123 Ariz. 518, 520–21, 601 P.2d 281, 283–84 (1979) (Although a possessor may be liable to invitees for harm caused by a known or obvious danger if the possessor should anticipate the harm despite such knowledge or obviousness, that rule does not apply to licensees. A possessor has a "duty ... to refrain from knowingly exposing [licensees] to a hidden peril," but "is not liable ... to licensees for open and obvious dangers known to them.").

The "open and obvious" or "hidden peril" rule has been repeatedly repudiated as a test of duty elsewhere in tort law. In product liability, for example, our supreme court rejected the open and obvious rule fifteen years ago, stating: "We do not subscribe to this 'patent-latent' distinction in the context of a manufacturer's strict liability in tort. Its only function is to

---

N.Y.S.2d 564, 568 (1976); *Mariorenzi v. Joseph DiPonte, Inc.,* 114 R.I. 294, 307, 333 A.2d 127, 133 (1975).

Illinois courts have abolished the common law classifications with regard to children. *See Cope v. Doe,* 102 Ill.2d 278, 288, 80 Ill.Dec. 40, 45, 464 N.E.2d 1023, 1028 (1984). In addition, Montana has interpreted its general liability statute so as to require reasonable care toward all entrants upon land. *See Limberhand v. Big Ditch Co.,* 218 Mont. 132, 140–41, 706 P.2d 491, 497 (1985).

Another seven jurisdictions have considered the common law classification approach and have explicitly declined to alter it. *See Baldwin by Baldwin v. Mosley,* 295 Ark. 285, 289, 748 S.W.2d 146, 148 (1988); *Huyck v. Hecla Mining Co.,* 101 Idaho 299, 301, 612 P.2d 142, 144 (1980); *Bowers v. Ottenad,* 240 Kan. 208, 211, 729 P.2d 1103, 1105 (1986); *Kirschner v. Louisville Gas & Electric Co.,* 743 S.W.2d 840, 844 (Ky.1988); *Adams v. Fred's Dollar Store of Batesville,* 497 So.2d 1097, 1102 (Miss.1986); *Egede-Nissen v. Crystal Mountain, Inc.,* 93 Wash.2d 127, 131–32, 606 P.2d 1214, 1218 (1980); *Yalowizer v. Husky Oil Co.,* 629 P.2d 465, 469 (Wyo.1981).

encourage patent design defects." *Byrns v. Riddell, Inc.*, 113 Ariz. 264, 267, 550 P.2d 1065, 1068 (1976); *see also Turner v. Machine Ice Co.*, 138 Ariz. 329, 333, 674 P.2d 883, 887 (App.1983) ("The obviousness of a defect is ... only one factor to be considered in the determination of whether the defect is unreasonably dangerous.").

In a 1963 premises liability case addressing a landlord's duty to a tenant, our supreme court expressed the identical view:

> Of course, the bare fact that a condition is 'open and obvious' does not necessarily mean that it is *not* unreasonably dangerous. 2 Harper & James, *The Law of Torts* § 27.13. The open and obvious condition is merely a factor in determining whether the condition was unreasonably dangerous.

*Cummings v. Prater*, 95 Ariz. 20, 27, 386 P.2d 27, 31 (1963).

Two years later, this court, following *Cummings*, reversed summary judgment and reinstated the personal injury claim of a bowling alley customer, holding that the allegedly obvious nature of a drop in the floor at the side of a bowling lane was "merely a factor ... in determining whether the condition was unreasonably dangerous." *Murphy v. El Dorado Bowl, Inc.*, 2 Ariz.App. 341, 343, 409 P.2d 57, 59 (1965) (quoting *Cummings*, 95 Ariz. at 27, 386 P.2d at 31).

More recently, in a case involving a diver injured on public recreational land, our supreme court reversed summary judgment for the state, pointing out that the supposed obviousness of the danger did not bear on the question whether the state as possessor had a duty, but rather on the question whether the state breached the standard of reasonable care:

> Again, the possibility that the defect or hazard is 'open and obvious' is a factor to be considered in determining whether the possessor's failure to remedy the hazard or provide a warning was unreasonable and therefore breached the standard of care; it is not a factor to be used in determining the very existence of the duty which is a precondition for the exercise of the standard of care.

*Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985).

The supreme court has never confronted the impact of such reasoning on the law of licensees. There is no restriction to invitees inherent in the supreme court's *Markowitz* explanation that openness of a danger bears only on the issue of unreasonableness and is "not a factor to be used in determining the very existence of [a] duty." *Id.*[2] Nor does categorization as licensee logically invalidate the perception that an otherwise patent danger may be nonetheless unreasonable where it might be undiscovered, unappreciated, or momentarily forgotten by a foreseeably distracted or preoccupied visitor. *Murphy*, 2 Ariz. App. at 343–44, 409 P.2d at 57–58; *Markowitz*, 146 Ariz. at 356, 706 P.2d at 368; *McLeod v. Newcomer*, 163 Ariz. 6, 10, 785 P.2d 575, 579 (App.1989).

The difficulty remains, however, that the supreme court has not yet applied to all premises liability cases its recognition that the question whether an open danger is an unreasonable danger requires fact-specific—not categorical—assessment of the degree and severity of the remaining risk. The *Markowitz* court, for example, stated repeatedly that the plaintiff was an invitee and presented its opinion as an inquiry into the state's "duty of reasonable care to those whom it invites to its parks." 146 Ariz. at 357, 706 P.2d at 369. Thus, though the court's reasoning in cases such as *Markowitz* has eviscerated the classic formulation of a landowner's duty to licensees, the

**2.** The majority takes a step toward importing this recognition into the law of licensees, stating, pursuant to *Markowitz*, that "whether a hazard is 'open and obvious' is not relevant to determine the existence of duty ... [but] to determining if the duty was breached." The supreme court, however, has not yet abandoned—at least for adult licensees—hiddenness of danger as a defining element of duty. *Compare Shannon*, 102 Ariz. at 317, 428 P.2d at 995 (because children may not appreciate the risk of a condition open to their perception, possessors owe child licensees a duty of reasonable care under the circumstances) *with Hicks*, 123 Ariz. at 521, 601 P.2d at 284 (possessors owe adult licensees a duty of protection against hidden, not open and obvious, perils).

court to date has left that category outwardly undisturbed.

### III.

In summary, the licensee/invitee distinction fails contemporary analysis on multiple counts:

(1) Elsewhere in tort law, our supreme court has distilled, as the essence of duty, to act reasonably in the light of foreseeable and unreasonable risks. Yet under the rubric of licensees, the law defines categories of permissive and invited visitors toward whom landowners need not act reasonably despite what a jury might regard as foreseeable and unreasonable risks.

(2) Elsewhere in tort law, our supreme court has so forcefully and repeatedly rejected the open and obvious rule that its very mention in a motion for summary judgment warns the trial judge of an invitation to reversible error. In the law of licensees, however, the rule has escaped examination and retains some present force.

(3) Elsewhere in tort law, our supreme court has warned pointedly that the obvious quality of a danger pertains only to the question of reasonable care, not to the question of existence of a duty. Yet the classic law of licensees makes hiddenness of danger the very defining element of duty.

My colleagues, recognizing recent trends, demote openness of danger from a question of duty to a question of breach. Yet even in so doing, in apparent deference to the traditional formulation of the law of licensees, they continue to give the "open and obvious" question undue emphasis. They observe, for instance, that "whether the pool constituted a hidden peril to Stacie is a question which reasonable persons may well answer differently." Elsewhere they pose the question "whether a reasonable person would believe a pool was an open and obvious hazard to a 19 month old child."

The homeowner's duty in this case was not to avoid subjecting Stacie to a hidden peril, but "to exercise such care as a rea-sonable prudent person would exercise toward children under like circumstances." *Shannon*, 102 Ariz. at 317, 428 P.2d at 995. Concomitantly, the question of breach for the jury is not whether the pool constituted an open or hidden danger, but whether it constituted an *unreasonable* danger. In the resolution of that question, the quality of openness or hiddenness should be merely a point of consideration, not a point of stress. *Cummings*, 95 Ariz. at 27, 386 P.2d at 31.

These reasons, among others, invite reexamination of a distinction that the United States Supreme Court found archaic in 1959. In my judgment, the shelf life of the licensee/invitee distinction has expired.