785 P.2d 575

**Tyler McLEOD, a minor, By and Through his guardian ad litem, Nanci SMITH, Plaintiff–Appellant,**

**v.**

**Janis Helen NEWCOMER, a single person, Defendant–Appellee.**

**Nos. 1 CA–CV 88–106, 1 CA–CV 88–201.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 5, 1989.

Review Denied Feb. 6, 1990.

---

Hagen Boyle & Jones by Tom J. Hagen and Mack T. Jones, Phoenix, for plaintiff-appellant.

Mark Diekemper, P.C. by Mark S. Diekemper, Phoenix, for defendant-appellee.

## OPINION

ALLEN G. MINKER, Judge.

Plaintiff, two years old at the time, suffered brain damage when found in the swimming pool of the house rented by his parents. Through a guardian ad litem, he filed suit against the landlord for failing to install a fence separating the pool from the rest of the backyard. Both sides filed motions for summary judgment on the issue of the landlord's liability. The trial court granted the landlord's motion and entered judgment in her favor, from which plaintiff appeals.

We find that the question of whether the landlord breached a duty to the plaintiff is for the finder of fact to decide. We hold that neither motion for summary judgment should have been granted and, accordingly, reverse the ruling of the trial court.

## FACTS

We view the facts most favorably to the party opposing summary judgment. *State ex rel. Corbin v. Challenge, Inc.*, 151 Ariz. 20, 24, 725 P.2d 727, 731 (App.1986). Appellee Janis Newcomer owned a house in Phoenix, Arizona. The backyard contained a swimming pool. On May 28, 1985, Newcomer entered into a lease agreement with Laurin and Debra McLeod, under which the McLeods and their two small children would live in the house. Laurin McLeod is Newcomer's brother. At the beginning of the lease term, Newcomer and Debra McLeod agreed that a fence should be erected around the pool to prevent the McLeod children from having access to the pool. Between May 1985 and January 1986, several additional conversations took place between Newcomer and Debra or Laurin regarding the installation of a fence. It was agreed that Newcomer would pay for the fence. All parties understood that Newcomer was unable to afford

the cost of installing the fence at that time because she was involved in a custody dispute.

On January 15, 1986, Debra was home with her two children and a neighbor's child. She allowed Tyler, then two and one-half years old, to ride his tricycle in the backyard. A commotion between the two other children distracted her for approximately five to ten minutes. Tyler was subsequently found floating in the pool. Although he was revived, he sustained brain damage and is quadriplegic.

## LAW

The issue on appeal concerns the nature of a landlord's duty to the child of a tenant. We begin our discussion by pointing out that summary judgment is generally not appropriate in negligence actions. It may be granted only when there is no dispute as to any material facts, only one inference can be drawn from those facts, and the moving party is entitled to judgment as a matter of law. *Tribe v. Shell Oil Co., Inc.,* 133 Ariz. 517, 518, 652 P.2d 1040, 1041 (1982).

A negligence claim requires the plaintiff to prove: 1) the existence of a duty recognized by the law, obligating the defendant to conform to a certain standard of conduct; 2) a breach of that duty; 3) a causal connection between the breach and injury; and 4) actual injuries or damages. *Ontiveros v. Borak,* 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983) (citing W. Prosser, *Handbook on the Law of Torts,* § 30, at 143 (4th ed. 1971)). In this appeal, we are concerned with the first two elements only.

■ Whether there is a duty is a question of law, to be decided by the court. *Markowitz v. Arizona Parks Board,* 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985). In determining whether a duty exists, we focus on the relation between the individuals involved. Duty is the requirement to conform to a standard of conduct in order to protect others against unreasonable risks of harm. *Id. See also Coburn v. City of*

*Tucson,* 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984); *Dolezal v. Carbrey,* 161 Ariz. 365, 778 P.2d 1261 (App.1989). However, as stated in *Markowitz,* "the existence of a duty is not to be confused with details of the standard of conduct." 146 Ariz. at 355, 706 P.2d at 367.

■ The nature of a landlord's duty to a tenant was set forth in *Cummings v. Prater,* 95 Ariz. 20, 386 P.2d 27 (1963), where the supreme court stated:

[T]he landlord is under a duty of ordinary care to inspect the premises when he had reason to suspect defects existing at the time of the taking of the tenancy and to either repair them or warn the tenant of their existence. In other words *he is under the duty to take those precautions for the safety of the tenant as would be taken by a reasonably prudent man under similar circumstances.*

*Id.* at 26, 386 P.2d at 31 (footnote omitted) (emphasis added). *See also McFarland v. Kahn,* 123 Ariz. 62, 597 P.2d 544 (1979). In *Presson v. Mountain States Properties, Inc.,* 18 Ariz.App. 176, 178, 501 P.2d 17, 19 (1972), this court stated that a "duty of due care is owed to a tenant throughout the lease period to maintain premises free from 'unreasonably dangerous' instrumentalities that could potentially cause injury." [1]

Newcomer argues that summary judgment was proper because:

1) Tyler was not a tenant; rather, his parents were, and Newcomer allowed no unsafe condition as to them; and

2) The unfenced swimming pool was open and obvious; and

3) The fact that the outer perimeter of the property was fenced satisfied any duty Newcomer had, and landowners cannot, as a matter of law, be required to erect a "second" fence.

The trial court did not state its reasons for granting summary judgment. We are bound to uphold the trial court if its decision is supportable on any grounds.

---

1. The evolution of a landlord's duty from *"caveat lessee"* to the present is described in *Udy v.*

*Calvary Corp.,* 162 Ariz. 7, 780 P.2d 1055 (App. 1989) (Jacobson, J., concurring).

■ We first disagree with Newcomer's contention that Tyler is not a tenant. Arizona law defines a tenant as "a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others." A.R.S. § 33–1310(15) (1974). Although the one-page rental agreement in this case does not specify who will occupy the house, it can be inferred from the agreement, as well as the facts, that Tyler is Newcomer's nephew and that several discussions were held concerning the unsafe nature of the unfenced pool, and that Tyler was residing in the house with Newcomer's knowledge and consent. Thus, he was a person entitled to occupy the house. Tyler, as a tenant, was owed the same duty as any other tenant, including adult tenants.

■ At least two Arizona cases involving child plaintiffs have based their analyses on the duty owed by a landlord to a tenant. In *Presson v. Mountain States Properties, Inc.*, the plaintiff was a nine-year-old who was burned by a faulty water heater. 18 Ariz.App. at 177, 501 P.2d at 18. This court held that the landlord owed the child the duty previously set forth in *Cummings. Id.* at 178–79, 501 P.2d at 19–20. No distinction was made between the duty owed her, as opposed to the duty owed her father, the signator on the lease. *Id.* Similarly, the injured twelve-year-old plaintiff in *McFarland v. Kahn* was owed the same duty as that owed a tenant. 123 Ariz. at 62–63, 597 P.2d at 544–45.

Newcomer's duty, then, was to exercise such care as a reasonably prudent person would exercise toward children under similar circumstances, those circumstances being the presence of an unfenced pool in the backyard of a house rented to a family with small children.

■ The question whether Newcomer satisfied her duty to the parents of plaintiff is not dispositive. Because a duty was owed also to plaintiff, the issue next turns to whether that duty was breached. Whether, in regard to plaintiff, the swimming pool constituted an unreasonably dangerous condition, is a question of fact. That question must take into account all the relevant circumstances, including Newcomer's awareness of plaintiff's age, and attendant risks.

In the context of a landowner's liability to a child licensee, our supreme court has stated:

> The characteristics of children are proper matters for consideration in determining what is ordinary care with respect to them, and there may be a duty to take precautions with respect to those of tender years which would not be necessary in the care of adults. The duty is to exercise such care as a reasonable prudent person would exercise toward children under like circumstances.

*Shannon v. Butler Homes, Inc.*, 102 Ariz. 312, 317, 428 P.2d 990, 995 (1967) (citation omitted).

The question may not be determined as a matter of law, in either side's favor, because reasonable minds may disagree on Newcomer's liability. When all the discussions of the parties, circumstances of the plaintiff and his family and conditions of the house and pool are taken into consideration, the finder of fact may conclude that as to Tyler the unfenced condition of the swimming pool was unreasonably dangerous—or not.

Newcomer also argues that any duty she had was assumed by plaintiff's parents during discussions regarding who would erect a fence around the pool and who would pay for it. While Newcomer may recall, and may argue to the jury, that plaintiff's parents voluntarily assumed the obligation, in her deposition she gave the following:

> Q. In any of these conversations did you ever say words, in substance or in effect: Yes, I agree to put a fence up there at some point in time, not a specific point in time, but yes, I agree to put a fence up?
>
> A. Not in those words but, yes, I said: 'Yes, we will in the future at some point in time.'

From the above and similar statements at depositions, we find that the question of

assumption of the duty is for the finder of fact.

Similarly, as to whether the unfenced pool constituted an open and obvious condition, we find the question inappropriate to resolve as a matter of law. Here the question is not whether the condition and its dangerousness were open and obvious to plaintiff's parents, but to plaintiff. As stated in *Tribe v. Shell Oil Co., Inc.*, whether the condition "was dangerous, open and obvious or whether appellees should have anticipated the harm if open and obvious are issues to be decided by a jury in its capacity as triers of fact." 133 Ariz. at 519, 652 P.2d at 1042. As stated in *Cummings v. Prater:*

> The open and obvious condition is merely a factor to be taken into consideration in determining whether the condition was unreasonably dangerous.

95 Ariz. at 27, 386 P.2d at 31.

■ Newcomer argues that wherever parents with children rent a residence, it is for the parents to insure the safety of children from obvious dangers, not for the landlord. She cites cases such as *Reek v. Lutz*, 90 R.I. 340, 158 A.2d 145 (1960), and *John Aragona Enterprises, Inc. v. Miller*, 213 Va. 298, 191 S.E.2d 804 (1972). In *Reek*, the Rhode Island Supreme Court held that "[t]he primary duty to exercise reasonable care for the safety of a child rests upon the parent.... The existence of the landlord and tenant relationship does not serve to transfer this obligation to the landlord in the absence of some unusual circumstance." 90 R.I. at 342, 158 A.2d at 147.

Other courts, however, have refused to hold that parents alone are responsible for their children's safety as opposed to landlords. In *Rahn v. Beurskens*, 66 Ill.App.2d 423, 213 N.E.2d 301 (1966), a 15–month–old boy was injured when he grasped an outside electrical wire in one hand and a water faucet with the other. There, as here, a discussion between landlord and tenant took place as to who would safeguard an obviously dangerous condition to children. *Id.* at 425, 213 N.E.2d at 303. Landlord testified he told the parent-tenant to repair it. *Id.* The parent-tenant testified the landlord had said, "he would see about having it fixed." *Id.* While the court held that a landlord is not an insurer of children's safety, the foreseeability of injury to children made the issue of landlord's liability one for the jury. *Id.* at 426–27, 213 N.E.2d at 304–05. The Delaware Supreme Court reached the same conclusion as to construction of a fence in *Williamson v. Wilmington Housing Authority*, 58 Del. 252, 208 A.2d 304 (1965).

We will not attempt to alter the duty of a landlord to child tenants in Arizona. We believe the quotation from *Reek v. Lutz* has stated the matter backwards. The existence of a parent-child relationship alone does not serve to transfer a landlord's obligation, without additional circumstances (to-wit: an agreement as described in the following). The mere fact that a child resides with parents will not relieve a landlord from his or her duty as described by *Cummings v. Prater*. In the case of "open and obvious" dangers to children too young to realize them, however, the landlord and parents may agree that the parents will assume the full duty of making those repairs or taking the proper and realistic measures which will protect their children from a recognized, specific hazard. Such would constitute a discharge of duty by a landlord. If it is raised in this case, it remains a jury question.

Newcomer argues that since a perimeter fence is in place around the entire property, the law cannot require a "second" fence between a swimming pool and the rest of the yard. Once again, whether a reasonably prudent landlord would not be required to take further precautions for the safety of adult tenants is not the question. We do believe, however, that a jury could conclude that a reasonably prudent landlord, knowing that a rented house was to be occupied by small children, should take precautions. It is not unforeseeable that a young child could obtain access to an unfenced pool and drown or suffer injuries, despite the parents' awareness of the dangers involved, as evidenced by the high number of swimming pool accidents involv-

ing young children in Arizona and elsewhere each year.[2]

An almost identical factual situation from Arizona resulted in a Ninth Circuit Court of Appeals decision, holding the same way as we do now. *Schultz v. Eslick,* 788 F.2d 558 (9th Cir.1986). In *Schultz,* a three-year-old child in a leased residence suffered severe injuries when she fell into an unfenced pool. Construing Arizona law, the court noted the nature of a landlord's duty as set forth in *Cummings,* and further that the open and obvious nature of the dangerous aspects of a swimming pool would not necessarily relieve a landlord of liability to the child. *Id.* at 559. The court remanded the matter for trial, stating:

> No Arizona decision appears to have decided whether an unfenced residential pool is unreasonably dangerous to a three-year-old child as a matter of law. We believe that the liability question should be sent to an Arizona jury because reasonable minds could differ on whether the unfenced pool was unreasonably dangerous to small children. The type of precautions required of the landlord would depend, in part, upon the anticipated tenants and reasonable preparation for them.

*Id.* at 559–60. The court also pointed out that the proper inquiry was whether the landlords satisfied their duty of care to the three-year-old plaintiff, as opposed to their duty of care to the parents, and that the character or age of the victim must be considered in that inquiry. *Id.* at 560. *See also Johnson v. Tucson Estates, Inc.,* 140 Ariz. 531, 683 P.2d 330 (App.1984); *Marble v. Parham,* 3 Ariz.App. 585, 416 P.2d 1006 (1966).

■ Newcomer argues that the reasoning in *Schultz* is flawed and that it misconstrues Arizona law, primarily because many of the cases it relies on concern a property owner's liability to entrants. We find, however, that a landlord's duty to a tenant is analogous to that of a property owner to an invitee. *Forbes v. Romo,* 123

Ariz. 548, 550, 601 P.2d 311, 313 (App. 1979). The Ninth Circuit's reliance on such case law was therefore appropriate. We consider *Schultz* to be a proper construction of Arizona law, as evidenced by our holding in this case.

Because it is a fact question, we are equally unwilling to conclude that a pool unfenced from the rest of the backyard is unreasonably dangerous as a matter of law, as urged by Tyler. *See Presson,* 18 Ariz.App. at 179, 501 P.2d at 20. That is a determination to be made upon the facts of each case. Nevertheless, we do conclude that Newcomer owed Tyler a duty to take such precautions that a reasonably prudent person would take to protect young children residing on leased premises with an unfenced pool. The fact that Tyler's parents were aware of the risks involved and may have been contributorily negligent does not eliminate Newcomer's duty to Tyler (unless Newcomer's duty was assumed by the parents). Questions of contributory negligence are always jury questions and, more importantly, when a child is the plaintiff, the parents' negligence cannot be imputed to the child. *Vigue v. Noyes,* 113 Ariz. 237, 239 n. 1, 550 P.2d 234, 236 n. 1 (1976); *Delozier v. Smith,* 22 Ariz.App. 136, 139, 524 P.2d 970, 973 (1974). *See also* Annotation, *Landlord's Liability to Tenant's Child for Personal Injuries Resulting From Defects in Premises, as Affected By Tenant's Negligence With Respect to Supervision of Child,* 82 A.L.R.3d 1079 (1978).

In summary, we do not hold that an internally unfenced swimming pool is or is not unreasonably dangerous as a matter of law. It is for the finder of fact to decide. The jury's determination in this type of case will necessarily depend upon such facts as the landlord's knowledge of the proposed tenants, any agreement for the parents to assume responsibility, the layout of the premises, and so forth. We do not intend this holding to create any new duty on the part of landlords. Given the facts of this case, however, a jury could conclude

---

**2.** The dangers posed by swimming pools without adequate fencing are not new to this court.

*See, e.g., Giacona v. Tapley,* 5 Ariz.App. 494, 428 P.2d 439 (1967).

**12**

that Newcomer did not fulfill her duty to Tyler because she did not erect a fence around the pool. On the other hand, it could also conclude that she did fulfill her duty by virtue of the arguments discussed herein.

This matter is reversed and remanded for proceedings consistent with this opinion.

SHELLEY, P.J., and CLABORNE, J., concur.

NOTE: The Honorable ALLEN G. MINKER was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3.