921 P.2d 710

Elizabeth **PICCOLA**, a minor, By and Through Vincent **PICCOLA** and Karen Piccola, her parents and next friends; Vincent Piccola and Karen Piccola, individually, Plaintiffs–Appellants,

v.

Guy **WOODALL**, Defendant–Appellee.

No. 1 CA–CV 94–0484.

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 8, 1996.

Louis C. Webb and David W. Bell, Phoenix, for Plaintiffs–Appellants.

Burrell, Seletos & Tinsley by Louis T. Seletos, and Ulrich, Kessler & Anger, P.C. by Paul G. Ulrich and Donn G. Kessler, Phoenix, for Defendant–Appellee.

## OPINION

THOMPSON, Judge.

Appellant Elizabeth Piccola (Piccola) appeals from summary judgment entered in favor of Appellee Guy Woodall (Woodall) on Piccola's negligence action. Piccola was injured when she fell through a plate glass door at a home owned by Woodall and leased to Steven and Tammy Steinburg (the Steinburgs). We hold that a landlord owes a duty of reasonable care to his tenants which includes an obligation to inspect and warn of any hazardous condition on the leased premises. However, we conclude that Woodall is not liable to Piccola because the Steinburgs had a reasonable opportunity to discover the allegedly dangerous condition and to take effective precautions against it. We therefore affirm the trial court's entry of judgment for Woodall.

## FACTS AND PROCEDURAL HISTORY

On review from the trial court's order granting summary judgment, the facts are viewed in the light most favorable to the party against whom summary judgment was entered. *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985). Six year old Elizabeth Piccola

was playing at the Steinburgs' house and was injured when she fell through a sliding door made of plate glass. The Steinburgs leased the house from Woodall, the owner. Until this accident, Woodall did not know that the door was made of plate glass as opposed to safety glass.[1] Conversely, Mrs. Steinburg testified that, based on her knowledge of construction and the age of the house, she did not think the door was made of safety glass.[2] The Steinburgs had lived in the house for approximately two and a half years at the time of Piccola's accident.

The trial court granted Woodall's motion for summary judgment, finding that a landlord is not liable to the tenant or others for defective conditions existing at the time of lease unless the lessor knew of the condition and failed to inform the lessee. The court concluded that because Woodall did not know of the condition and the lessee did know of the condition, Woodall fulfilled his duty to the tenants and that he owed no duty to Piccola, the tenants' guest. Piccola filed a motion for rehearing. This was denied, and judgment was entered in favor of Woodall. Piccola appeals this judgment.

## DISCUSSION

### I. Standard of Review

■■■ To grant a motion for summary judgment, the trial court must find that no genuine issue of material fact exists in the record and that the moving party is entitled to judgment on the merits as a matter of law. *Orme School v. Reeves,* 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). When we review a trial court's decision to grant summary

judgment, we determine "*de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Gonzalez v. Satrustegui,* 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App. 1993). If our review reveals that reasonable inferences about material facts could be resolved in favor of either party, we must reverse and remand for a trial on the merits. *United Bank of Arizona v. Allyn,* 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990).

### II. Landlord's Duty

■■■ To establish a prima facie case of negligence, Piccola must prove: (1) the existence of a duty recognized by law, obligating the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the breach and the injury; and (4) actual damages. *Ontiveros v. Borak,* 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983). Whether a duty exists is a question of law to be decided by the court. *Bach v. State,* 152 Ariz. 145, 147, 730 P.2d 854, 856 (App.1986).

Piccola argues that Woodall, as the landlord of the premises on which she was injured, owed a duty to exercise reasonable care for the safety of his tenants and others in light of known and foreseeable risks. Piccola also contends that the written lease agreement between Woodall and the Steinburgs imposed a duty on Woodall to make the premises safe and habitable. *See Restatement (Second) of Torts* § 357. Piccola claims that these duties extend to her, as the tenants' guest.

---

1. Piccola contends that there was insufficient evidence presented below that Woodall did not know that the door was made of plate glass. However, in Woodall's deposition testimony, he denies knowing that the glass door was constructed with "non-safety" glass. His deposition testimony was attached to Piccola's Statement of Facts and was, therefore, "on file" and properly considered in deciding Woodall's Motion for Summary Judgment. An affidavit from Woodall is not required in light of this evidence. *See* Rule 56(c), Ariz. R. Civ. P. ("The judgment sought shall be rendered forthwith if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, *if any,* show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law.") (Emphasis added.)

2. Mrs. Steinburg testified at her deposition as follows:

Q. And you assumed it was safety glass before it was rented to you?
MR. SELETOS: Objection to the form [of] the question.
THE WITNESS [Mrs. Steinburg]: My dad is in construction. I knew back then you used plate glass. I'm going to assume I probably knew that it was plate glass. I didn't think it was safety glass.

■ In granting summary judgment in favor of Woodall, the trial court applied *Clarke v. Edging*, 20 Ariz.App. 267, 272–273, 512 P.2d 30, 35–36 (1973). In *Clarke*, Division Two of this Court adopted the general rule of landlord non-liability that is set forth in the *Restatement (Second) of Torts* § 356:

[A] lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession.

The Arizona Supreme Court and this Division, however, have recognized that this formulation is out-dated, and now state the landlord's duty as follows:

[T]he landlord is under a duty of ordinary care to inspect the premises when he has reason to suspect defects existing at the time of the taking of the tenancy and to either repair them or warn the tenant of their existence. [Footnote omitted.] In other words he is under the duty to take those precautions for the safety of the tenant as would be taken by a reasonably prudent man under similar circumstances.

*Cummings v. Prater*, 95 Ariz. 20, 26, 386 P.2d 27, 31 (1963); *see also McLeod v. Newcomer*, 163 Ariz. 6, 8, 785 P.2d 575, 577 (App.1989); *Udy v. Calvary Corp.*, 162 Ariz. 7, 11–12, 780 P.2d 1055, 1059–60 (App.1989); *Presson v. Mountain States Properties, Inc.*, 18 Ariz.App. 176, 178–79, 501 P.2d 17, 19–20 (1972); *but see* W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 63, at 434–435 (5th ed.1984) (hereinafter "Prosser & Keeton") (recognizing the general rule that the landlord is not liable for dangerous conditions existing once the tenant takes possession of the premises).

■ In *Udy*, Judge Jacobson concisely explained the evolution of the landlord's duty under Arizona law:

[At common law, when land was leased to a tenant,] [t]he tenant acquired an estate in the leasehold that conveyed not only possession but also control. Prosser and Keeton [§ 63, at 434]. The general rule was that in the absence of an express contractual provision, a tenant took the premises as he found them. *Id., see also Cummings v. Prater*, 95 Ariz. 20, 386 P.2d 27 (1963). In *Cummings*, however, the Arizona Supreme Court recognized that modern social policy considerations and Arizona precedent compelled the conclusion that certain exceptions should be carved out from the general rule. 95 Ariz. at 25, 386 P.2d at 30. The court therefore held that the landlord was under a duty to inspect the premises and "to take those precautions for the safety of the tenant as would be taken by a reasonably prudent man under similar circumstances." 95 Ariz. at 26, 386 P.2d at 31.

*Udy*, 162 Ariz. at 15, 780 P.2d at 1063 (Jacobson, P.J., specially concurring).[3] Recognizing the temporary nature of most leaseholds today, our supreme court has noted that landlords tend to be in a better position than are tenants to discover unsafe conditions in the premises to be leased. *Cummings*, 95 Ariz. at 25, 386 P.2d at 30. A duty on lessors to reasonably inspect and warn of hazards best comports with the contemporary facts of leaseholds in this state. *Id.*

■ Thus, the trial court erred in concluding that a landlord is not liable to the tenant or others for defective conditions existing at the time of the lease unless he knew of such conditions and failed to inform the tenant. A landlord owes a duty of reasonable care which requires inspection of premises if there is reason to suspect defects existing at the time the tenant takes possession. The landlord must repair or warn the tenant of such defects. *Cummings*, 95 Ariz. at 26, 386 P.2d at 31. We next examine the extent and duration of this obligation as applied to the particular facts of this case.[4]

---

3. The holding in *Cummings* also comports with the rule that, under Arizona law, "a landlord's duty to a tenant is analogous [sic] to that of a property owner to an invitee." *McLeod*, 163 Ariz. at 11, 785 P.2d at 580. A landowner owes a duty to invitees to make the premises reasonably safe and to inspect for and warn of dangers.

*Moore v. Southwestern Sash & Door Co.*, 71 Ariz. 418, 422, 228 P.2d 993, 995 (1951).

4. Piccola also claims that the contract to repair exception found in *Restatement (Second) of Torts* § 357 supplies a basis for Woodall's duty. Piccola is not entitled to relief under this section. The lease agreement requires Woodall to comply with

## III. Extent and Duration of the Landlord's Obligation

■ Although the evidence established that Woodall did not know there was plate glass and not safety glass in the sliding glass door, this does not entitle Woodall to summary judgment. Actual knowledge of the dangerous condition is not required. The duty to inspect arises when the landlord "has reason to suspect" a defect. *Id.* Information from which a reasonable person could infer that a dangerous condition exists is sufficient to impose liability. *See Webster v. Culbertson,* 158 Ariz. 159, 163, 761 P.2d 1063, 1067 (1988).

■ Piccola argues that Woodall had constructive notice of the hazard presented by the arcadia door because the Arizona Residential Landlord & Tenant Act requires that a landlord "[c]omply with the requirements of applicable building codes materially affecting health and safety." Arizona Revised Statutes Annotated (A.R.S.) § 33–1324(A)(1). Piccola asserts that, as a matter of law, a plate glass door is deemed dangerous and violative of "applicable building codes" by A.R.S. § 36–1631 *et seq.* A.R.S. §§ 36–1631 to –1635 require the labeling and installation of safety glazing material in all commercial, industrial, and public buildings and family dwellings. However, as stated in the historical note following A.R.S. § 36–1361, these statutory provisions do not apply to contracts for the installation of glazing materials entered into prior to 1974. The record indicates that the leased residence was constructed before 1974. Thus, Piccola has not shown that the prohibition of the installation of non-safety glass effectuated in 1974 has any application in this case. Because we cannot hold that the door was dangerous as violative of "applicable building codes," we cannot attribute constructive notice on the basis of § 33–1324.

■ Piccola claims that the lack of a manufacturer's markings on the door should have alerted Woodall that the door was made of plate glass. In a California Supreme Court case cited by Piccola, *Becker v. IRM Corp.,* 38 Cal.3d 454, 213 Cal.Rptr. 213, 223, 698 P.2d 116, 126 (1985), *overruled on other grounds* in *Peterson v. Superior Court,* 10 Cal.4th 1185, 43 Cal.Rptr.2d 836, 899 P.2d 905 (1995), entry of summary judgment was deemed improper because the trier of fact could find that a reasonable visual inspection by the landlord would have disclosed that the injury-causing glass doors were marked "untempered." Because we ultimately conclude that Woodall's duty to warn of reasonably discoverable dangerous conditions passed to his tenants under the facts of this case, we do not resolve the issue here raised by Piccola, other than to note that there is contrary authority in a case involving facts which are analogous to those presented herein. *See Fitzgerald v. Cestari,* 569 So.2d 1258, 1260 (Fla.1990) (landlord not held to standard of an expert in discerning composition of glass door; reasonable inspection of unmarked sliding glass door need not include consultation with expert although such expert would explain lack of markings as indicative of non-tempered glass).[5]

---

applicable building codes and to "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." This language does not require the landlord to inspect the premises to ascertain the need for repairs. Any duty imposed under *Restatement (Second) of Torts* § 357 is defined by the terms of the contract:

> Unless it provides that the lessor shall inspect the land to ascertain the need of repairs, a contract to keep the premises in a safe condition subjects the lessor to liability only if he does not exercise reasonable care after he has had notice of the need of repairs.

*Restatement (Second) of Torts* § 357, comment d. The Steinburgs never notified Woodall of any problems or need to replace the door. Thus, Woodall would not be liable under this exception. *See Prosser & Keeton* § 63, at 444–445

(absent express provision to contrary, covenant to repair means only that landlord "must repair [ ] within a reasonable time *after he has been notified* of the dangerous condition, or has otherwise discovered it."); *accord Vieyra v. Engineering Inv. Co.,* 205 Kan. 775, 473 P.2d 44, 46 (1970) (absent provision authorizing lessor to inspect premises to ascertain the need for repairs, covenant to make repairs does not give rise to liability unless lessee gives notice of need for repairs and lessor fails to exercise reasonable diligence in making those repairs).

5. Piccola also claims that the age of the house should have put Woodall on constructive notice that the door was made of plate glass. We also do not address this claim.

We disagree with Piccola's further suggestion that Woodall was "possibly obligated to replace the plate glass with safety glass." The only authority cited by Piccola in support of this proposition, *Glynos v. Jagoda,* 249 Kan. 473, 819 P.2d 1202 (1991), in fact would compel this court to conclude that, because the leased property here was built before the applicable building code required the use of safety glass and was in compliance with pertinent safety requirements at the time of construction,[6] Woodall was not required to remove the plate glass and replace it with safety glass. 819 P.2d at 1211 (landlord had no legal duty to rebuild in order to comply with each update in the building code).

■ Piccola next argues that Woodall is not relieved from liability because of Mrs. Steinburg's knowledge of the plate glass. The trial court ruled that Woodall fulfilled his duty because the tenant knew of the plate glass door.[7] We agree on these facts that the tenant had sufficient opportunity to learn of the dangerous condition, and that the landlord is therefore absolved of liability for it. *See Restatement (Second) of Torts* § 358(2) (where the dangerous condition is undisclosed by the landlord, his liability continues only until the tenant has had a reasonable opportunity to discover the condition and take precautions); *Restatement (Second) of Property (Landlord and Tenant)* § 17.1(2), comment f (same). In adopting the "modern rule," which recognized an exception to the general rule of landlord non-liability for dangerous conditions on leased premises, our supreme court expressly referred to the *Restatement of Torts* § 358, the substance of which is carried over in the current Restate-

ment. *Cummings,* 95 Ariz. at 25, 386 P.2d at 30. As comment b of the *Restatement (Second) of Torts* § 358 makes clear concerning the extent and duration of the landlord's duty: "The lessor is under no duty to warn the lessee of a condition which he reasonably believes that the lessee will discover, or of the extent of the risk involved in an obvious condition, unless he should realize that the lessee is unlikely to appreciate it." We hereby adopt *Restatement (Second) of Torts* § 358(2), as it comports with the law of landlord liability established in *Cummings* and is consistent with the body of law developed since *Cummings.*[8]

In so doing, we reject Piccola's contention that Woodall was required to provide "some type of warning as to the danger" presented by the sliding glass door by placing a decal or other marking on it which would alert others to a dangerous but unseen hazard. Although the parties dispute whether a decal was on the arcadia door when the tenants took possession, we find that any duty to warn of or remedy the condition by making the door conspicuous had devolved upon the tenants. The tenants had been in possession under the lease for two and a half years at the time of the accident, knew of the location of the arcadia door, and correctly believed it to be made. of non-tempered plate glass. Woodall's duty to warn or remedy continued "only until the lessee [ ] had reasonable opportunity to discover the condition and to take [ ] precautions" against any hazard. *Restatement (Second) of Torts* § 358(2). The tenants had ample opportunity to discover the composition of the door and to undertake the very precaution, placement of a safety decal, which Piccola argues Woodall

---

6. Piccola stated in the opening brief that "the home met applicable building codes at the time it was built." Piccola's expert based his opinion that the arcadia door was constructed with plate glass in part "upon the fact that the home was apparently constructed before 1974," and he averred "that at the time the residence in question was constructed, and presumably at the time that the arcadia door was installed, the building codes for the State of Arizona did not require[ ] the use of safety or tempered glass." Piccola has never alleged any facts that would suggest that the arcadia door violated applicable building codes at the time of installation.

7. The Steinburgs had possession of this house for two and a half years before Piccola's injury. Mrs. Steinburg testified that she knew the door was not safety glass. Notwithstanding this knowledge, the Steinburgs apparently did not put stickers on the door to identify the presence of non-safety glass.

8. This Restatement provision is clearly consistent with *McLeod,* in which we acknowledged that the landlord's duty to a child on the premises could pass to the tenant, absolving the landlord. 163 Ariz. at 10, 785 P.2d at 579.

should have accomplished. Thus, Woodall is not liable for Piccola's injuries.

## CONCLUSION

Woodall had no duty to replace the arcadia door plate glass with safety glass. Any duty he had to warn of or remedy the hazard posed by the door was discharged because the Steinburgs had ample opportunity to discover the alleged dangerous condition and to take such precautions against the hazard themselves. Woodall is therefore not liable to a guest of the tenants who was injured in going through the door. Although our analysis differs from that of the trial court, summary judgment was properly entered for Woodall. The judgment is affirmed.

GRANT, P.J., and NOYES, J., concur.