NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CHELSEA MCCOMBS, et al., *Plaintiffs/Appellants*,

*v.*

THE JOYCE C. MILLER LIVING TRUST, et al., *Defendant/Appellee*.

No. 1 CA-CV 22-0634
FILED 8-15-2023

Appeal from the Superior Court in Maricopa County
No. CV2019-015120
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

Tiffany & Bosco P.A., Phoenix
By William M. Fischbach, Amy D. Sells (*argued*)
*Counsel for Plaintiffs/Appellants*

Jones, Skelton & Hochuli P.L.C., Phoenix
By William D. Holm, Eileen Dennis GilBride (*argued*)
*Counsel for Defendant/Appellee*

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Chief Judge David B. Gass and Judge Andrew M. Jacobs joined.

**F U R U Y A**, Judge:

¶1            Plaintiffs Chelsea and Chase McCombs appeal from the denial of a motion for a new trial or, alternatively, relief from a judgment after a jury found in favor of defendant Joyce C. Miller Living Trust ("the Trust").[1] For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2            Ms. Debbie McCombs passed away in a house fire on February 27, 2018. When firefighters arrived, Ms. McCombs was found unresponsive, lying in the hallway a few feet from a chair located in the northeast quadrant of the living room. A double-key deadbolt lock—requiring a key to open it from both inside and outside the home—was affixed to the front door. The home's smoke detectors had been disabled.[2]

¶3            Ms. McCombs's children, Plaintiffs, brought a wrongful death suit against the Trust nearly two years after her death, alleging negligence and negligence per se. After the fire, the Trust's insurance company inspected the property and took photographs of the damage in its post-fire state. The property was sold within six months of the fire.

¶4            At trial, Plaintiffs argued the double-key deadbolt lock on the front door, normally prohibited by fire code, and non-functioning smoke detectors were a cause of Ms. McCombs's death. The Trust argued Ms. McCombs likely caused the fire with a lit cigarette, and her death was

---

[1]      For the sake of brevity and convenience and because jural status has not been raised as an issue in this case, our decision uses the parties' and the superior court's shorthand convention of simply referring to the "Trust" as a named defendant in this case, rather than to the trustee acting for the Trust. Nevertheless we acknowledge the Trust, as an Arizona non-business trust (*see* Arizona Revised Statutes ("A.R.S.") §§ 10-1871, -1879), is not itself a jural entity. As such, it is incapable of owning property, transacting business, pursuing or defending litigation, or otherwise acting in its own right. *See* A.R.S. § 14-10106(A); *McLeod v. Deutsche Bank Nat'l Tr. Co.*, 1 CA-CV 15-0504, 2017 WL 2189498, at *3 ¶ 13 (Ariz. App. May 18, 2017) (mem. decision) ("Generally, a common-law trust is not considered a legal entity capable of suing or being sued.") (citing cases).

[2]      At the time of the fire, the home belonged to Ms. McCombs's mother, Joyce Miller, who passed away the following day for unrelated reasons. The home then became part of the Trust's corpus.

proximately caused by her apparent attempts to fight the fire rather than escape through an available exit, at least two of which were not affixed with double-key deadbolt locks.

¶5        Plaintiffs' expert conceded that while the fire's exact cause or point-of-origin could not be discerned, it was possible the fire had been caused by a lit cigarette. Expert testimony also demonstrated the fire likely originated in the "northeast quadrant" of the living room, where what the Trust characterized as Ms. McCombs's "smoking chair" was located. The Trust further introduced evidence showing either Ms. McCombs's brother Rick, or possibly Ms. McCombs herself, had disabled the smoke alarms in the residence to prevent the frequent false alarms that occurred when Ms. McCombs and Rick smoked inside the residence.

¶6        During trial, the court discovered the Trust had failed to disclose almost 500 photographs of the house, which were taken during the first few weeks following the fire. The court ordered defense counsel to immediately identify and produce any "unique" photos not previously disclosed to Plaintiffs' counsel, conducted a separate examination of the defense expert to determine whether the undisclosed photographs formed the basis for his opinions, prevented him from using any undisclosed photographs in his testimony, and allowed Plaintiffs' counsel to use the disclosure violation to impeach him.

¶7        The jury returned a verdict in favor of the Trust. Plaintiffs filed post-trial motions for new trial under Arizona Rule of Civil Procedure ("Rule") 59 or, alternatively, relief from the judgment under Rule 60 or, alternatively, sanctions under Rule 37. The superior court denied the motions, and Plaintiffs timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

I.      **Rule 59 Motion for New Trial, Rule 60 Motion for Relief from Judgment, and Motion for Rule 37 Sanctions**

¶8        We review denial of a motion for new trial, motion for relief from a judgment, and motion for sanctions under Rule 37 for an abuse of discretion. *Warne Invs., Ltd. v. Higgins*, 219 Ariz. 186, 194 ¶ 33 (App. 2008) (Rule 59 motion for new trial); *Fry v. Garcia*, 213 Ariz. 70, 72 ¶ 7 (App. 2006) (Rule 60 motion for relief from judgment); *Takieh v. O'Meara*, 252 Ariz. 51, 61 ¶ 34 (App. 2021) (Rule 37 motion for sanctions). "An 'abuse of discretion' is discretion manifestly unreasonable, or exercised on untenable grounds,

or for untenable reasons." *Englert v. Carondelet Health Network*, 199 Ariz. 21, 27 ¶ 14 (App. 2000).

**¶9**            Rule 26.1(a)(9) creates a broad and continuing duty to disclose "any tangible evidence, documents, or electronically stored information that may be relevant to the subject matter of the action." Ariz. R. Civ. P. 26.1(a)(9); (f)(2) ("[E]ach party must serve additional or amended disclosures when new or additional information is discovered or revealed."). Disclosure rules are intended to "allow the parties a 'reasonable opportunity' to prepare, 'nothing more, nothing less.'" *Waddell v. Titan Ins. Co., Inc.*, 207 Ariz. 529, 537 ¶ 33 (App. 2004) (finding that "[w]hile a more complete disclosure . . . would have been preferable," a party "was not denied a reasonable opportunity to prepare" by incomplete disclosure).

**¶10**           Plaintiffs contend the superior court abused its discretion by denying their motion based upon the Trust's disclosure violations. We disagree for two reasons. First, while a violation of Rule 26.1 undoubtedly occurred, the court correctly found the error to be harmless. Second, the court undertook sufficient remedial measures to appropriately address the Trust's violations.

### A.    The Trust's Disclosure Violations Did Not Affect Plaintiffs' Substantial Rights

**¶11**           We defer to the court's determination regarding imposing sanctions for discovery violations because it is in a better position to determine whether disclosure violations have occurred and their "practical effect" on the proceedings. *Takieh*, 252 Ariz. at 61 ¶ 34 (citation omitted). Further, "the court must disregard all errors and defects that do not affect any party's substantial rights." Ariz. R. Civ. P. 61.

**¶12**           The Trust's theory of the case argued Ms. McCombs had not tried to escape through the front door during the fire, but rather died because of her choice to attempt to fight the fire. According to the Trust, this apparent decision was the intervening superseding cause of Ms. McCombs's death. In support of this theory, the Trust argued, among other things, that "S"-shaped burns found on Ms. McCombs' body were consistent with springs from a "couch or chair" in the living room, thereby suggesting she approached (and fell into) the furniture trying to fight the fire rather than escaping.

**¶13**           Plaintiffs, meanwhile, maintained Ms. McCombs passed out from smoke inhalation while attempting to escape, ostensibly because her efforts were inhibited by the absence of functioning smoke alarms and the

double-key deadbolt on the front door. To this end, Plaintiffs presented lay and expert witness testimony and argument to support their theory.

¶14     The jurors' general verdict for the Trust establishes the jurors' implicit agreement with the Trust's theory over Plaintiffs'. The record contains sufficient evidence from which the jurors could have concluded, regardless of the fire's origins, events occurring during and after the fire were the proximate cause of Ms. McCombs's death.

¶15     Plaintiffs argue on appeal, as they did in their motions before the court, that the undisclosed photographs depicting the coils on the various pieces of burned furniture in the living room constitute further proof Ms. McCombs was trying to escape, rather than fighting the fire. They claim their inability to properly prepare to present and characterize this further proof prejudiced their case before the jury. But we concur with the court's finding that "[b]ased on the jury's verdict, the specific source of the fire within the living room or the specific piece of furniture that caused the burn or brand mark on the Decedent's body was not material."

¶16     During trial, Plaintiffs' expert agreed the fire originated in the northeast quadrant of the living room and even opined it may have been caused by either an electrical fire or a cigarette. He did not state that the exact mechanism of the fire's origin was material to his analysis and the materiality of that mechanism is not apparent from his testimony or Plaintiffs' arguments. Additionally, the Trust's inclusion of "couch or chair" as the source of the "S"-shaped burns—rather than exclusively attributing them to the coils on the "smoking chair"—already suggested that any of the furniture in the living room could have caused the burns.

¶17     Thus, the key factual dispute was the nature of Ms. McCombs' response to the already-developed fire; specifically, whether she tried to fight it or tried to flee from it. The mechanism of the fire's origin or the source of Ms. McCombs' burns are only superficially relevant to resolution of that issue. Moreover, Plaintiffs were not denied opportunity to present their theory to the jury. As noted, Plaintiffs introduced much evidence and argument to convince the jury Ms. McCombs was trying to flee the fire. Therefore, at most, the undisclosed photographs would have been cumulative evidence to support their main theory. We are unpersuaded that any loss of the ability to present cumulative evidence demonstrates prejudice. Because the undisclosed photographs would only have tended to present cumulative evidence of factors that were not essential to the factual findings implicit to the jury's verdict, Plaintiffs have failed to establish any prejudice warranting a new trial.

### B.     The Court Imposed Sufficient Sanctions

¶18     The record shows the court imposed multiple sanctions pursuant to Rule 37 for the Trust's disclosure violations. Sanctions imposed under Rule 37 must be appropriate under the circumstances and preceded by due process. *Roberts v. City of Phoenix*, 225 Ariz. 112, 119–20 ¶ 27 (App. 2010). We defer to the court's imposition of sanctions under Rule 37. *Id.* at 119 ¶ 24; *see also* Ariz. R. Civ. P. 37, cmt. ("Rule 37(d) now contains language underscoring the court's discretion to impose any sanctions it deems appropriate in the circumstances, which in turn reinforces that the issuance of such sanctions is subject to review for abuse of discretion.").[3]

¶19     After the Trust attempted to use an undisclosed photograph to impeach Chase McCombs's testimony on cross-examination, the court issued a limiting instruction requiring the jury to disregard any discussion of the photographs. The court further precluded the Trust from using the photographs in its examination of its own expert witness, and Plaintiffs were permitted to cross-examine the Trust's expert on his failure to disclose the nearly 500 photographs. And as the court pointed out, Plaintiffs declined to continue the trial to review the newly disclosed photographs with their expert and determine whether the photographs would influence his opinion. Considering both our deference to the court's prejudice determination and the multiple sanctions imposed at trial, we find no abuse of discretion in denying Plaintiffs' motions for a new trial, relief from judgment, or additional Rule 37 sanctions.

## II.     Rule 50 Motion for Judgment as a Matter of Law

¶20     We review the court's denial of a motion for judgment as a matter of law de novo, viewing the evidence in the light most favorable to the non-moving party. *ABCDW LLC v. Banning*, 241 Ariz. 427, 433 ¶ 16 (App. 2016); *Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 225 Ariz. 194, 200 ¶ 12 (App. 2010). We will affirm if substantial evidence supports the outcome. *Sec. Title Agency, Inc. v. Pope*, 219 Ariz. 480, 492 ¶ 51 (App. 2008) (citation omitted).

---

[3]     Rule 37(c) requires an express finding of harmlessness to avoid imposition of sanctions. Ariz. R. Civ. P. 37(c)(1). We note that even under Rule 37(c)(1)'s stringent requirements, the court's actions withstand scrutiny; not only did the court impose several Rule 37 sanctions to remedy the disclosure violation during trial, but it also made an express finding the Trust's failure to disclose did not prejudice Plaintiffs.

¶21            During trial, Plaintiffs moved for judgment as a matter of law, asking the court to determine the Trust was negligent per se for installing the double-key deadbolt lock on the front door.[4] The parties disputed which fire codes, if any, applied to the property at the time of Ms. McCombs's death. Plaintiffs argued the International Fire Code ("IFC") applied to the property and prohibited the double-key deadbolt lock affixed to the property's front door. The Trust argued no applicable code prohibited the double-key deadbolt lock on the residential property at the time of Ms. McCombs's death, given the year the home was built.

¶22            After hearing argument on the issue and before reading the final jury instructions, the court "found as a matter of law that a fire code covers this property." The court subsequently instructed the jury: "The law applicable to the home on the date of the fire stated that egress doors shall be openable from the inside without the use of a key or any special knowledge or effect—sorry, any special knowledge or effort." The jury instruction reflects the IFC prohibition on double-key deadbolt locks on egress doors, as requested by Plaintiffs.

¶23            We find no error in the court's denial of Plaintiffs' motion for judgment as a matter of law. The judge instructed the jury that the IFC's prohibition applied to the property at the time of Ms. McCombs's death, making the double-key deadbolt lock a violation. But even if the court had granted Plaintiffs' motion, the jurors would still be required to find the Trust's negligence caused Ms. McCombs's death. *See, e.g., Alaface v. Nat'l Inv. Co.*, 181 Ariz. 586, 598 (App. 1994) ("A plaintiff who makes a claim of negligence *per se* must show that the defendant's actions were the proximate cause of his or her injuries."). Even if, as Plaintiffs suggest, granting the Rule 50 motion would have "taken [the issues of duty and breach] out of the jury's hands," the jury could still have found—and effectively did find—in favor of the Trust on causation. The record contains substantial evidence to support the jury's implicit finding the double-key

---

[4]      Plaintiffs failed to preserve the arguments made in their pre-verdict Rule 50 motion; no post-verdict motion for judgment as a matter of law was filed, and Plaintiffs did not re-address the negligence per se arguments in their post-trial motion for new trial. However, we may "consider questions of law and evidentiary rulings 'regardless of whether they were presented to the lower court in a motion for a new trial.'" *Marquette Venture Partners II, L.P. v. Leonesio*, 227 Ariz. 179, 182 ¶ 7 (App. 2011). Because the Trust did not raise waiver, we exercise our discretion to address Plaintiffs' argument on its merits.

deadbolt lock, even if a violation of the applicable fire code, did not proximately cause Ms. McCombs's death. Therefore, the court did not err.

### III.    Motion for Mistrial

¶24        Plaintiffs challenge the court's refusal to grant their motion for mistrial. We review the court's denial of a motion for mistrial for an abuse of discretion. *State v. Marshall*, 197 Ariz. 496, 500 ¶ 10 (App. 2000). Superior courts have considerable discretion because they are "in the best position to determine whether the evidence will actually affect the outcome of the trial." *State v. Jones*, 197 Ariz. 290, 304 ¶ 32 (2000). To determine whether a mistrial is appropriate, courts will consider "(1) whether the jury has heard something it should not hear, and (2) the probability that the jury was influenced by what it heard." *State v. Williamson*, 236 Ariz. 550, 560 ¶ 29 (App. 2015).

¶25        During the Trust's closing argument, counsel stated: "[B]ased on some of the minimal facts that you had at the beginning of this case, one of the jurors said, after hearing what has been reported, it sounded like this is a money grab. It is a money grab, that's why we're here." Plaintiffs timely objected that the argument contained facts not in evidence. Later, the Trust's counsel again stated: "It wasn't until the lawyers got involved that everything changed. That's because it became a money grab." The court issued a curative instruction following the Trust's closing argument:

> I want to remind you of an instruction that was provided to you, and that is, what the lawyers say is not evidence. . . . I'm going to ask that you disregard [defense counsel]'s statement regarding what a purported juror may have said during jury selection, and remember from the preliminary instructions you are to decide the case only from the evidence and testimony presented here in the courtroom[.]

¶26        After the jury began deliberations, the court determined that allowing the reference to the alleged juror's statement had been "in error, because the conversation that was referenced was outside the presence of the jury and was a private communication" between the parties and Prospective Juror 16, who was ultimately struck for cause. Despite this error, the court nevertheless denied Plaintiffs' mistrial motion and stated "[t]he theory of the case that you believe that [P]laintiffs have a motive for testifying in a particular way in order to maximize their recovery, the Court doesn't find to be inappropriate."

¶27        The court did not abuse its discretion in refusing to grant a mistrial based on counsel's improper closing argument. The court is in the best position to assess the jury's response to counsel's comments and determine whether, considering the degree and nature of counsel's transgression, the jury was likely to be impermissibly influenced by the comments. *See Jones*, 197 Ariz. at 304 ¶ 32. And although counsel's reference to comments made by a prospective juror in voir dire was improper, the subsequent references to a "money grab" were made in the context of assessing a witness's motive to testify in a particular way, which was permissible argument. Further, the court fashioned a remedy it thought proportionate to the impropriety by issuing a curative instruction, asking the jurors to disregard the offending portions of closing argument. We presume juries follow curative instructions, *State v. Dann*, 205 Ariz. 557, 571 ¶ 48 (2003). We hold Plaintiffs have failed to overcome this presumption. Therefore, we find no abuse of discretion.

## IV.    Denial of Motion to Strike Juror 26 for Cause

¶28        Plaintiffs argue the superior court erroneously refused to strike Prospective Juror 26 ("Juror 26"). We review the court's refusal to strike a prospective juror for cause for an abuse of discretion and only look to whether the record supports the judge's findings. *State v. Speer*, 221 Ariz. 449, 455 ¶ 23 (2009); *State v. Allen*, 253 Ariz. 306, 331 ¶ 47 (2022) ("Reviewing courts defer to the trial judge's perceptions of the juror and question only whether the judge's findings are supported by the record."). We defer to the court as it "has the power to decide whether a venire person's views would actually impair his ability to apply the law." *Jones*, 197 Ariz. at 302 ¶ 24 (further stating "deference must be paid to the trial judge who sees and hears the juror").

¶29        During voir dire, Juror 26 expressed a viewpoint that the case "might be an opportunistic lawsuit." He reportedly based this view on what he had "seen on TV, and heard on radios and TV and everything else about what goes on today," but not necessarily on anything about this particular lawsuit. He continued:

> You know, I look at it and I think, well, you've got a case where the heir is suing the estate. So you expect that heir is probably expecting to get something from the estate anyway. Frankly, I'm not sure I understand why anybody would do that, unless it was they could maybe get a little bit more of an insurance settlement or something if they did it this way.

When the Trust's counsel inquired about the basis for his statements, Juror 26 indicated he was "[r]eacting to [his] perspective of human nature," and he did not "know anything about the merits" of the case.

**¶30** The court declined to strike Juror 26 for cause, finding his comments were "merely him speculating as to the motive for an heir to sue what would be the Trust in this case." The court was persuaded Juror 26's views didn't "have anything to do with the position of the parties" or "the relationship of the parties," but rather expressed a general view of "human nature, and likely being skeptical as to why people are bringing lawsuits other than to make money." In the court's view, Plaintiffs failed to establish Juror 26's inability to be fair and impartial. Because it "sees and hears" the juror, *see Jones*, 197 Ariz. at 302 ¶ 24, we defer to the court's assessments and, on this record, we cannot conclude the court abused its discretion.

## V. Exclusion of Insurance Policy

**¶31** Plaintiffs sought to introduce a "rental dwelling [insurance] policy" the Trust took out on the home Ms. McCombs resided in at the time of her death by questioning the Trust's trustee, Heather Ackerman, about the policy's existence.

**¶32** Relevance is a prerequisite to the admissibility of evidence. Ariz. R. Evid. 402. Evidence is relevant if it tends to make a fact of consequence "more or less probable than it would be without the evidence." Ariz. R. Evid. 401. Superior courts have broad discretion to determine whether evidence is relevant and admissible, and we will not disturb such determination absent an abuse of discretion. *State v. Smith*, 136 Ariz. 273, 276 (1983); *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 88 ¶ 7 (App. 1998).

**¶33** Attempting to establish applicability of the duties[5] inherent in a landlord-tenant relationship, Plaintiffs argued the policy was relevant to show the Trust had obtained "rental" insurance for the property, which in

---

[5] *See Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 267 ¶ 9 (2021) ("In Arizona, duty is based on either special relationships recognized by the common law or relationships created by public policy.") (citations omitted); *Piccola By & Through Piccola v. Woodall*, 186 Ariz. 307, 310 (App. 1996) ("A landlord owes a duty of reasonable care which requires inspection of premises if there is reason to suspect defects existing at the time the tenant takes possession. The landlord must repair or warn the tenant of such defects.").

turn would support Plaintiffs' argument the Trust's predecessor was Ms. McCombs's landlord at the time of her death. The court determined that questioning Ms. Ackerman about the existence of the rental policy was irrelevant and impermissibly outside the scope of Plaintiffs' cross-examination because she had not denied the home was a rental property, and the policy would remain irrelevant unless and until Ms. Ackerman did so testify. *See* Ariz. R. Evid. 611(b) ("A witness may be cross-examined on any relevant matter."). Plaintiffs' counsel acknowledged this point.

**¶34** It was not an abuse of discretion for the court to exclude this evidence. The court instructed the jury that "[f]or a rental agreement to exist, there must be an offer, acceptance of the offer, consideration, and terms sufficiently specific so that the obligations created by the agreement can be determined." Whether a "rental dwelling insurance policy" existed on the property does not make the existence of a rental agreement "more or less probable" as required by Rule 401. The insurance policy's existence does not speak directly to the existence of an offer, acceptance, consideration, or terms of the purported agreement. Nor does it establish which entity had legal or actual control of the property necessary to impose the duty. *See Dabush*, 250 Ariz. at 267 ¶ 11 ("[landlords] only owe a duty to [tenant] if they had legal control of the premises or exercised actual, physical control over it."), 269–70 ¶ 20 ("although a landlord is presumed to retain control of a common area . . . a tenant may overcome that presumption by exercising actual, exclusive control over it."). We therefore conclude the court did not abuse its discretion in precluding examination related to the insurance policy as irrelevant to whether a rental agreement existed between Ms. McCombs and the Trust at the time of her death.

## CONCLUSION

**¶35** We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA