[Civ. No. 16054. First Dist., Div. One. Jan. 21, 1955.]

IRENE McDONELL et al., Appellants, v. AMERICAN TRUST COMPANY, as Executor, etc., Respondent.

Arthur D. Klang and Albert E. Polonsky for Appellants.

Sidney L. Weinstock, Roger Anderson and Harold J. Chase for Respondent.

WOOD (Fred B.), J.—Warren and Irene McDonell, husband and wife, brought this action against Hanna M. Vitenson, alleging that they were lessees of one of the ground floor stores of a multistoried building which belonged to defendant. They sought damages allegedly caused by water entering their store because of defects in the roof and roof drains, portions of the building reserved to the defendant lessor and under her sole control.

*The major question is whether or not the second and the fourth counts stated causes of action.*[1] The answer will be

---

[1] According to the second amended complaint, there were several occasions and types of such damage: (1) On December 1, 1952, water gathered on the floor of the store and plaintiff Irene slipped and fell, to her injury (1st and 2d counts); (2) On December 6, 1952, a large piece of plaster fell from the ceiling of the store, causing plaintiff Irene to slip and fall in avoiding it, to her injury (3d and 4th counts); (3) Plaintiff Warren sustained special damages on account of loss of Irene's services and for medical treatment of the injuries suffered by her on December 6th (5th count); (4) In April and May, 1952, water leaked into plaintiffs' store, causing personal property damage (6th count).

The first, third, fifth and sixth counts sounded in negligence; the

the same as to each because they differ only as to the dates and the nature and extent of the injuries received by Irene.

In the second count plaintiffs devoted a series of paragraphs to the statement of facts upon which they based their claim for actual damages, following by a single paragraph in which they set forth their claim for punitive damages; summarized, respectively, as follows:

(1) *Actual Damages.* Plaintiffs were lessees of one of the ground floor stores of a multistoried building owned by defendant who had sole operation and control of the roof and roof drains, including the sole right of access to make repairs. Defendant knew of the defective condition of the premises and of the roof and the roof drains in January, 1952, and was notified of said defective condition by plaintiffs in April and May and by the city building inspector in October; plaintiffs, in November, 1952, again demanded that defendant remedy said defective conditions. Although defendant knew "that said defective conditions could cause damage and injury to the property and persons of the tenants," she "refused to remedy said defective conditions." December 1, 1952, "by reason of the wilful failure of the defendant to repair the premises as aforesaid, knowing that said defective conditions could cause damage and injury to the property and persons of the tenants therein," water gathered on the floor of plaintiffs' store "due to the defective condition of the premises as aforesaid" and plaintiff Irene McDonell, while carefully walking, slipped upon the floor. "Due to the recklessness and wilful acts" of defendant, "as hereinabove particularly alleged," plaintiff was injured and has suffered damages in the sum of $1,500.

(2) *Punitive Damages.* "In wilfully failing to repair" said defective condition of the premises with reference to the roof and roof drains "after having received due notice of the dangerous condition thereof," and "having knowledge of the fact that said defective conditions could cause damage and injury to the property and persons of the tenants," defendants were "guilty of wilful misconduct in their wilful and wanton neglect for the safety and health of the plaintiffs," and were also "guilty of a conscious disregard to the

second and fourth did not expressly allege negligence. Demurrers to the second and fourth counts were sustained without leave to amend. Demurrers to the other counts were overruled with leave to answer. Plaintiffs then dismissed all except the second and fourth counts. Judgment was entered for the defendant. The plaintiffs have appealed.

persons, rights and property of the plaintiffs by continually failing and refusing to repair the defective conditions as aforesaid," and Irene demands punitive damages in the sum of $1,500.

Plaintiffs in their opening brief interpret these allegations as stating that "the landlord wilfully, consciously, intentionally and deliberately failed to keep the roof and drainwells in working condition, and failed and affirmatively refused to repair the same after notice of the defects" with "a conscious, wilful and deliberate intention to injure and harm appellants"; tantamount to oppression and malice in fact, justifying punitive in addition to actual damages.[2]

We do not so read the second count. ▪▪▪ The gist of the first part of the count (that which deals with actual damages) is that defendant, aware of the defective condition of the roof and drains and knowing they could cause damage, refused to repair them. Those facts do not spell an intentional tort (a conscious, deliberate intent to injure the plaintiffs) or conduct so recklessly disregardful of the rights of others (sometimes characterized as wanton or wilful misconduct) as would show the "malice" *in fact* which the statute (Civ. Code, § 3294) requires as a predicate for punitive in addition to actual damages. (As to malice "in fact," see *Davis* v. *Hearst*, 160 Cal. 143, 161-164 [116 P. 530], and *Wolfsen* v. *Hathaway*, 32 Cal.2d 632, 647-651 [198 P.2d 1]. For a discussion of the differing concepts of negligence, of wanton and reckless misconduct, and of wilful misconduct, see *Donnelly* v. *Southern Pac. Co.*, 18 Cal.2d 863, 869-870 [118 P.2d 465]; *Weber* v. *Pinyan*, 9 Cal.2d 226, 230-238 [70 P.2d 183, 112 A.L.R. 407]; *Meek* v. *Fowler*, 3 Cal.2d 420, 426 [45 P.2d 194].) In the Donnelly case the court cited with approval section 500 of the Restatement of the Law of Torts, concerning conduct which the court designated as *wanton and reckless misconduct*: "§ 500. Reckless Disregard of Safety Defined. The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not

---

[2]Defendant Vitenson died pending this appeal and her executor was substituted as defendant-respondent. That means there can be no punitive damages assessed (*Evans* v. *Gibson*, 220 Cal. 476 [31 P.2d 389]) but does not render moot the question whether the second and fourth counts state causes of action for actual damages.

only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." The second count falls considerably short of alleging any such violation of duty when it merely pleads that defendant, aware of the defective condition and that such condition *could* cause damage, refused to repair.

Calling this a "wilful" failure to repair was not the same as saying defendant acted with a wrongful personal intent to injure or in reckless disregard of the rights of others. Nor did the words "reckless and wilful acts" add anything of significance, limited as they are by the words "as hereinabove particularly alleged." We conclude that the portion of the second count which deals with actual damages falls short of pleading a basis for punitive damages. At the very most, it sounds in negligence.

The latter part of the second count pleads no additional facts. It merely refers to certain of the allegations of the first part and characterizes defendant's conduct as "wilful misconduct," "wilful and wanton neglect," and "conscious disregard" of the safety, health, rights, and property of the plaintiffs. Those, in their context, are mere labels pinned on by the pleader.

In making this analysis, we do not rely solely upon the fact that, in form, plaintiffs stated their claim for punitive damages separately from their claim for actual damages and used such expressions as "wilful misconduct" and "wanton neglect" and "conscious disregard" solely in connection with punitive damages.[3] That form is a pattern here used by the pleader, a pattern established in the earlier complaints. It reflects his intent.

In the original complaint and again in the first amended complaint, the second count pleaded actual damages by incorporating by reference all of the paragraphs of the first count. It then added a paragraph pertaining to punitive damages, characterizing defendant's conduct as wilful misconduct, wanton neglect, and conscious disregard of plaintiffs' rights. In the second amended complaint instead of incor-

---

[3]There is but one cause of action when punitive damages are allowable: "*In an action* for the breach of an obligation . . . , *where* the *defendant has been* guilty of oppression, fraud, or *malice*, . . . the plaintiff, *in addition to the actual damages,* may recover damages for the sake of example and by way of punishing the defendant." (Civ. Code, § 3294, emphasis added. See *Foster* v. *Keating*, 120 Cal.App.2d 435 455 [261 P.2d 529].)

porating all the allegations of the first count by reference, the second count, when stating the claim for actual damages, repeats most of the allegations of the first count (refraining from the use of the word "neglect" and omitting a statement that defendant "promised" to repair). This is followed, as in the former complaints, by a paragraph in which the pleader gives expression to his mere conclusion that the facts pleaded show wilful misconduct, wanton neglect, and conscious disregard of the rights of others.

Plaintiffs confirm this analysis. In their opening brief, at page 12, they say: *"From the fact* that respondents knew of the defective condition of the drainwells; *from the fact* that respondents knew that appellants could not cause their own repairs to be made; *from the fact* that the dangerous condition of the premises was made known to the respondents; *from the fact* that three separate demands were made for repairs, the *appellants* in their pleading *are entitled* to pray for and did pray for *exemplary damages. These facts can only be construed as* a conscious, wilful and deliberate intention to injure and harm appellants." (Emphasis added.) Plaintiffs could not have told us more plainly that it is solely *from the "facts" stated* in the first part of the second count that they *draw the conclusion* that the defendant *intended to harm plaintiff* and thus was "guilty . . . of malice" and therefore subject to punitive damages under section 3294 of the Civil Code.[4]

We conclude, therefore, that the second count does not state facts sufficient to constitute a cause of action for an intentional tort or for wanton and reckless or wilful misconduct and, therefore, did not plead a basis for an award of punitive damages.

This does not necessarily mean that no cause of action was pleaded. ■ As against a general demurrer[5] all that is

---

[4]This does not mean that "wilful misconduct" and "wanton and reckless misconduct" may not be pleaded in general terms in similar fashion to the pleading of "negligence" in general terms. (See *Taylor v. Pacific Elec. Ry. Co.,* 172 Cal. 638, 642, 645 [158 P. 119]; *Gibson v. Easley,* 138 Cal.App. 303, 313 [32 P.2d 983].) It does mean that plaintiffs have not so used such terms in the second count. It is a matter of interpretation of what they did write. A judicial writing is subject to interpretation just as is any other writing. (See *Verdier v. Verdier,* 121 Cal.App.2d 190, 193 [263 P.2d 57].)

[5]Defendant interposed special as well as general demurrers to the second and fourth counts but as neither party has discussed the special demurrers upon this appeal we treat the issues as confined to those presented by the general demurrers.

required is that a plaintiff state facts entitling him to some type of relief. (*Boren* v. *State Personnel Board,* 37 Cal.2d 634, 638 [234 P.2d 981].) "If a complaint is sustainable on any theory it is not vulnerable to a general demurrer." (*Schumm* v. *Berg,* 37 Cal.2d 174, 183 [231 P.2d 39, 21 A.L.R. 2d 1051].)

We think the portion of the second count which pleads actual damages sufficiently states a cause of action against the defendant landlord "upon the tort concept of the duty imposed upon a landlord to use reasonable care in keeping in suitable condition such portions of the premises as are subject to his control." (*Columbia Lab., Inc.* v. *California Beauty etc. Co.,* 24 Cal.2d 114, 117 [148 P.2d 15]. See also *H. C. Capwell Co.* v. *Blake,* 9 Cal.App. 101, 111 [98 P. 51]; *Rathbun Co.* v. *Simmons,* 90 Cal.App. 692, 697-698 [266 P. 369]; *Inglis* v. *Garland,* 19 Cal.App.2d 767, 769-770 [64 P.2d 501]; 15 Cal.Jur. 706, Landlord and Tenant, § 116.) The applicable principle is well stated in section 361 of the Restatement of the Law of Torts: "A possessor of land, who leases a part thereof and retains in his own control any other part which is necessary to the safe use of the leased part, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care (a) could have discovered the condition and the risk involved therein, and (b) could have made the condition safe."

Defendant virtually concedes that the second and fourth counts do state causes of action for negligence[6] but claims it was not erroneous to sustain the general demurrers without leave to amend because, viewed as negligence counts, they were mere duplicates of the first and third counts, respectively, which the court held good as against the de-

---

[6]Defendant in its brief says: "the trial court properly concluded that plaintiffs had only alleged a failure to make certain repairs, the lessor knowing that certain injuries or damages *might* result to lessees. This amounts to allegations of the defendant's negligence and the plaintiffs were allowed to maintain all causes of action based on a negligence theory" (p. 21); also, that "the trial court could see from the entire second amended complaint and from all prior pleadings that plaintiffs could not and would not allege facts setting out a right to exemplary damages. The plaintiffs' entire theory was revealed to be negligence and the trial court was not required to give plaintiffs further opportunities to plead further legal conclusions on 'willful misconduct' without *facts* justifying such a conclusion, other than a mere failure to repair" (p. 18).

murrers. Therefore, says the defendant, the second and the fourth counts at most were ''redundant'' and no prejudice to the plaintiffs' interests was done by sustaining the demurrers. The fallacy of that argument is that ''redundancy'' is not a cause for demurrer. (Code Civ. Proc., §§ 430-431.) It is true that defendant gave notice of a motion to strike the second and fourth counts as redundant but the record before us does not indicate that the motion was ever made or acted upon; and defendant has not appealed.

██ Defendant further contends that the facts pleaded show that plaintiffs knew of the hazard of water infiltration and therefore assumed the risk of bodily injuries that either of them might sustain. We cannot say that it so appears from the face of the complaint as a matter of law. For aught that appears in the complaint, plaintiffs could not and did not know just when the water hazard might develop, or where it might occur, or what form it might take. It is not like an obvious defect in a lobby or hallway which a tenant may readily avoid using and thus escape the hazard.

In a memorandum presented subsequent to the filing of its brief, defendant contends that plaintiffs' sole theory before the trial court was that the second count pleaded an intentional tort and nothing else, and that the plaintiffs are bound by that theory and should not be allowed to advance an alternative theory upon this appeal. Even if a party is bound by his theory in such a case (a question we do not decide) the record does not present the issue. It does not show that the plaintiffs had any such sole exclusive theory. There is, for example, no record of the oral or the written argument, if any, which was presented to the trial court upon the hearing of the demurrers to the complaint.

All that we have said concerning the second count applies with equal force to the fourth count of the complaint.

The judgment is reversed with directions to overrule the demurrers to the second and fourth counts, allow the defendant to answer those counts, and take such further proceedings as may not be inconsistent with the views herein expressed.

Peters, P. J., and Bray, J., concurred.