# LAVERNE P. WHITE, Appellant/Plaintiff
## v.
# SPENCELEY REALTY, LLC, Appellee/Defendant

S. Ct. Civ. No. 2008-0065

Supreme Court of the Virgin Islands

July 28, 2010

669

SHAWN E. MAYNARD-HAHNFELD, ESQ., DESMOND L. MAYNARD, ESQ., Law Offices of Desmond L. Maynard, St. Thomas, USVI, *Attorneys for Appellant.*

GARRY E. GARTEN, ESQ., Law Office of Garry E. Garten, St. Thomas, USVI, *Attorney for Appellee.*

CABRET, *Associate Justice*; SWAN, *Associate Justice*; and BRADY, *Designated Justice.*[1]

## OPINION OF THE COURT

(July 28, 2010)

BRADY, J. Appellant Laverne P. White (hereafter "White") appeals a June 11, 2008 Superior Court memorandum opinion and order granting summary judgment to Appellee Spenceley Realty, LLC (hereafter "Spenceley") on the grounds that genuine issues of material fact exist with respect to whether Spenceley had control over the premises and had notice of the dangerous conditions. For the following reasons, we will affirm the Superior Court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 2004, White — an employee of the Virgin Islands Lottery (hereafter "the Lottery") — slipped on a settlement of water on the floor of the Lottery's restroom, causing her body to twist to the left.

---

[1] Chief Justice Rhys S. Hodge is recused from this matter. The Honorable Julio A. Brady, a sitting judge of the Superior Court, has been designated in his place pursuant to title 4, section 24(a) of the Virgin Islands Code.

670

In a separate incident on May 13, 2005, White injured herself while attempting to avoid water dripping — allegedly from the roof — onto her work area. At the time of both incidents, the Lottery leased its entire office building from Spenceley.

White filed suit against Spenceley in the Superior Court for negligence on June 7, 2005. In her complaint, White alleged that Spenceley possessed a duty to keep the premises in a safe condition, that Spenceley knew or should have known about the dangerous condition of the restroom and the roof, and that, despite this knowledge, Spenceley failed to make appropriate repairs or warn her of the dangers. (J.A. at 11-13.) Spenceley filed a motion for summary judgment on March 23, 2007, in which it argued that White failed to produce any evidence demonstrating that Spenceley 1) controlled the areas in question; 2) had notice of the alleged problems; or 3) caused the conditions that gave rise to her injuries. (J.A. at 21.) White filed an opposition to Spenceley's motion on June 6, 2007,[2] contending that the lease agreement between Spenceley and the Lottery required Spenceley to "maintain the said premises in good repair and tenantable conditions," to make "exterior structural repairs" as well as "repairs to the plumbing fixtures and electrical facilities," and that Spenceley knew or should have known about the dangerous conditions because they were persistent and ongoing. (J.A. at 136.) Spenceley submitted a reply to White's opposition on June 11, 2007. However, White submitted a supplemental response to Spenceley's motion for summary judgment on October 18, 2007, which contained new affidavits from two of White's co-workers — Yvonne Webster (hereafter "Webster") and Janice George (hereafter "George") — who averred that they had witnessed water on the bathroom floor and leaks from the roof prior to and during the time of White's injuries. Likewise, White submitted a second supplemental response on November 27, 2007, which contained an affidavit from another co-employee, Calvin Callwood (hereafter "Callwood"), who also averred to seeing water on the bathroom floor and leaks from the roof during the months before and after White's

---

[2] The Superior Court, in an April 30, 2007 order, granted Spenceley's motion for summary judgment due to White's failure to file a timely response. However, after considering White's May 16, 2007 motion for reconsideration, the Superior Court entered a May 21, 2007 order vacating its April 30, 2007 order and, in a subsequent order entered on the same day, granted White an extension of time to file a response to Spenceley's summary judgment motion.

injuries and that he had observed Spenceley's workmen work on both the roof leak and the plumbing before White was injured. On October 23, 2007 and November 29, 2007, Spenceley moved to strike each of these respective supplemental filings.

The Superior Court held a hearing on Spenceley's motion for summary judgment on May 7, 2008, and subsequently granted Spenceley's motion in a June 11, 2008 memorandum opinion and order. In its opinion, the Superior Court concluded that, with respect to both incidents, White had failed to point to any relevant evidence showing a genuine issue of material fact as to whether Spenceley possessed a duty to maintain the premises and whether Spenceley had notice of the dangerous conditions. Furthermore, the Superior Court, although considering the Webster and George affidavits, found that they were insufficient to avoid summary judgment because "the individuals involved were not working in the Spenceley Building with White when she was injured and cannot testify to the conditions that existed at the time that White was injured," and that the "[t]he affidavits also do not address the question of whether Spenceley was put on notice in any fashion about the alleged dangerous conditions." (J.A. at 287.) White filed a notice of appeal on July 9, 2008.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court . . . ." V.I. CODE. ANN. tit. 4, § 32(a). Since the Superior Court entered its order dismissing the entire litigation on June 11, 2008, and White's notice of appeal was filed on July 9, 2008, the notice of appeal was timely filed. *See* V.I. S. CT. R. 5(a)(1) ("[T]he notice of appeal required by Rule 4 shall be filed with the Clerk of the Superior Court within thirty days after the date of entry of the judgment or order appealed from . . . .").

"This Court exercises plenary review of a Superior Court's grant of summary judgment." *Williams v. United Corp.,* 50 V.I. 191, 194 (V.I. July 10, 2008) (citing *Maduro v. American Airlines, Inc.,* S. Ct. Civ. No. 2007-029, 2008 V.I. Supreme LEXIS 24, at *5 (V.I. Feb. 28, 2008)). "On review, we apply the same test that the lower court should have utilized." *Id.* "Because summary judgment is a drastic remedy, it should be granted

only when 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' " *Id.* (quoting FED. R. CIV. P. 56(c)). "When reviewing the record, this Court must view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving party, and we must take the non-moving party's conflicting allegations as true if 'supported by proper proofs.' " *Id.* (quoting *Seales v. Devine*, S. Ct. Civ. No. 2007-040, 2008 V.I. Supreme LEXIS 23, at *4 (V.I. Mar. 3, 2008)). "[T]o survive summary judgment, the nonmoving party's evidence must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Id.* (internal quotations omitted).

## B. Spenceley's Duty to Repair Arises From Its Contractual Obligation to the Lottery

■■■■ "The elements of a negligence suit are well established: 'duty, breach of duty, causation and damages.' " *Gass v. V.I. Tel. Corp.*, 149 F. Supp. 2d 205, 209 (D.V.I. 2001) (quoting *Logan v. Abramson Enters., Inc.*, 30 V.I. 72, 73 (D.V.I. 1994)). *See also* RESTATEMENT (SECOND) OF TORTS § 281 (1965) (stating elements of negligence). As a general rule, "a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee . . . for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession." *Id.* at § 355.[3] While sections 357,[4]

---

[3] "The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute . . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." 1 V.I.C. § 4.

[4] Section 357 states:

A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if

(a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and

(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and

(c) the lessor fails to exercise reasonable care to perform his contract.

360,[5] and 361[6] all serve as exceptions to this general rule, each section represents a separate basis for liability whose provisions only apply when the specific circumstances described in that section are present in a particular case. *See Gourdi v. Berkelo,* 122 N.M. 675, 930 P.2d 812, 814 (1996) (explaining that "Section 357 imposes liability on a landlord who contracts to make repairs" while "Section 360 imposes liability when the landlord retains control over the portions of the land which the tenant is entitled to use" and "Section 361 imposes liability when portions of land are retained in the lessor's control but are necessary to the safe operation of the leased premises.").

This Court notes that the parties have failed to clearly articulate, both to this Court and the Superior Court, which exceptions to section 355 apply to the instant case. Significantly, none of the parties' summary judgment filings discussed or cited to sections 355, 357, 360, or 361, even though both parties acknowledged that Spenceley had leased its entire building to the Lottery, with White expressly identifying the lease agreement as the source of any duty Spenceley may have owed her. (J.A. at 130.) Accordingly, the Superior Court, without the benefit of full briefing by the parties, based its grant of summary judgment on sections 360 and 361. However, although White contends in her appellate brief that section 357 establishes the basis for holding Spenceley liable for her injuries, (Appellant's Br. at 13), White does not discuss how section 357 differs from sections 360 and 361, and relies on case law applying

---

[5] Section 360 states:

A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

[6] Section 361 states:

A possessor of land who leases a part thereof and retains in his own control any other part which is necessary to the safe use of the leased part, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care
(a) could have discovered the condition and the risk involved, and
(b) could have made the condition safe.

Restatement provisions other than section 357.[7] Moreover, just as in its summary judgment motion, Spenceley failed to cite to or discuss any provisions of the Restatement (Second) of Torts in its appellate brief. Consequently, this Court must, as a threshold matter, determine which Restatement sections govern the instant appeal.

■ Section 360, by its own terms, applies only when "[a] possessor of land . . . leases a part thereof and retains in his own control any *other* part which the lessee is entitled to use as *appurtenant* to the part leased to him. . . ." (Emphases added). Courts have consistently interpreted this language to limit section 360's applicability only to situations in which a landlord leases a portion of his property to a tenant — such as a single floor in a multi-story office building — but authorizes the tenant to use another part of the property that has not been leased to any tenant, such as an elevator or staircase, and which the landlord has retained for his own use. *See, e.g., Rollo v. City of Kansas City*, 857 F. Supp. 1441, 1447 (D. Kan. 1994) (explaining that section 360 constitutes a "common areas exception" that "has been applied to stairways, hallways, and other portions of a lessor's property over which multiple tenants have rights of passage."); *McDonald v. Lighami Development Co., LLC*, 962 So.2d 847, 850 (Ala. Civ. App. 2006) (holding that section 360 applies to common areas, such as stairs and walkways, that landlord has reserved for himself but authorizes tenants to utilize); *Martinez v. Woodmar IV Condominiums Homeowners Ass'n, Inc.*, 189 Ariz. 206, 941 P.2d 218, 221 (1997) (holding section 360 applicable to common areas shared by multiple tenants over which no single tenant maintained control or possession); *Shields v. Wagman*, 350 Md. 666, 714 A.2d 881, 884-85 (1998) (same); *Gonzalez v. Tounjian*, 2003 ND 121, 665 N.W.2d 705, 710-11 (2003) (holding that trial correct erred in applying section 358 instead of section 360 because "the alleged dangerous conditions . . . were located in the common areas of the building, not in the premises leased to Gonzalez."). These decisions are consistent with the illustrations which follow section 360, all of which involve situations where landlords authorize tenants to

---

[7] For instance, in her discussion of constructive notice, White cites to no case law applying section 357, but primarily relies on *Smith v. M.P.W. Realty, Co.*, 423 Pa. 536, 225 A.2d 227 (1967), which expressly invoked section 361, and *Sieber v. Barnes*, No. 4951-A-86, 1987 Pa. Dist. & Cnty. Dec. LEXIS 19 (Pa. C.P. 1987), an unpublished trial court decision discussing the warranty of habitability provisions found in the RESTATEMENT (SECOND) OF PROPERTY; LANDLORD & TENANT § 5.1.

use portions of the landlord's property that have not been leased to any tenant. *See* RESTATEMENT (SECOND) OF TORTS § 360, cmt. a, illus. 1 (common elevator); cmt. b, illus. 2 (common stairway).

■ Section 361, like section 360, also limits itself to situations where a lessor retains "any *other* part," (emphasis added), but differs from section 360 in that that it applies to situations in which that part has neither been leased to a lessee nor authorized to be used by any lessee, but where maintenance of the part is required to render the premises that have been leased to the lessees safe or habitable. Accordingly, as with section 360, courts have limited section 361's applicability to impose a duty on a landlord who has leased multiple units in a single building to maintain the portions of the building that have not been leased to any tenant and which no tenant has been authorized to modify, such as the walls separating the units. *See, e.g., Osti v. Saylors*, 991 S.W.2d 322, 326-27 (Tex. App. 1999) (finding that section 361 required landlord to maintain effective fire escape in multi-unit apartment when "the uncontroverted summary judgment evidence indicates [the landlord] was in control of structural changes and did not expect his tenants to build a safe fire escape."); *Boe v. Healy*, 84 S.D. 155, 168 N.W.2d 710, 712-13 (1969) (holding that section 361 required landlord to maintain chimney used in multi-unit apartment building when no single tenant had ability to make repairs); *McDonell v. American Trust Co.*, 130 Cal. App. 2d 296, 279 P.2d 138, 141-43 (1955) (holding landlord's duty to repair drainwells in multi-story building, over which no single tenant possessed control, arose under section 361). Likewise, the illustrations that follow section 361 clearly indicate that the drafters intended for section 361 to apply only to situations where only part of a building has been leased to a tenant and, consequently, that tenant lacks the ability to make repairs or alterations to a structure whose continued functioning is necessary for the tenant to make safe use of the areas that the landlord has leased to him. *See* RESTATEMENT (SECOND) OF TORTS § 361, cmt. b, illus. 1 (roof of apartment building in which only top floor has been leased); illus. 2 (heating system of multi-unit office building).

■ Here, the lease agreement between Spenceley and the Lottery unequivocally grants the Lottery occupancy of the entire building and further authorizes the Lottery to make any alterations, additions, or attachments to the structure of the premises — both inside and outside — provided that it obtains Spenceley's written permission. (J.A. at 42-43.)

Moreover, White has never advanced the theory — either in her complaint, her opposition to Spenceley's motion for summary judgment, her appellate brief, or any other filing — that the bathroom and roof were never leased to the Lottery.[8] Consequently, only section 357 is applicable to this dispute. *See Rollo*, 857 F. Supp. at 1447 (holding that landlord's duty arose under section 357 rather than section 360 because unmaintained elevator was not a common area, but part of the premises leased to the tenant that the landlord had contracted to repair).

### C. White Introduced Sufficient Evidence that Spenceley Possessed a Duty to Repair

As her first issue on appeal, White argues that the Superior Court erred in holding that genuine issues of material fact did not exist with respect to whether Spenceley possessed a duty to repair the toilet.[9] Specifically, White contends that the lease agreement between Spenceley and the Lottery expressly provides that

> [t]he Lessor shall maintain the said premises in good repair and tenantable conditions during the continuance of the Lease . . . . [T]he Lessor reserves the right at reasonable times to enter and inspect the premises and to make any necessary repairs thereto. The Lessor, however, shall not be required to make interior repairs of a non-structural nature, nor shall the Government be required to make any exterior structural repairs or repairs to the plumbing fixtures and electrical facilities[,]

---

[8] On the contrary, the statement of undisputed material facts included in Spenceley's memorandum in support of summary judgment — which White did not dispute in her opposition — expressly states that "Spenceley leased No. 78-79 Kronprinsdens Gade to the Virgin Islands Government, Virgin Islands Lottery," that "[t]he V.I. Lottery tightly controls the building by . . . controlling all access to the building due to the sensitive nature of the work performed there," and that "Spenceley is not even allowed to have keys to the building." (J.A. at 27.)

[9] In its opinion, the Superior Court recognized that "[i]n interpreting the lease, Anna Clare Spenceley on behalf of Spenceley, believed that the lease provided that Spenceley would be responsible for . . . the roof. . . ." (J.A. at 284.)

(J.A. at 136), and that the Superior Court erred in considering extrinsic evidence — in the form of testimony by representatives of both Spenceley[10] and the Lottery[11] as to how they interpreted their contract — to hold that the plain text of the contract had been altered by the parties' subsequent conduct. (Appellant's Br. at 14.)

 This Court agrees that the Superior Court erred in its analysis of the duty element in the context of White's September 9, 2004 injury. The lease agreement, by its own terms, requires Spenceley to repair "plumbing fixtures." "In ordinary usage, a 'plumbing fixture' may include . . . a toilet." *City of Hollister v. Monterey Ins. Co.*, 165 Cal. App. 4th 455, 81 Cal. Rptr.3d 72, 111-12 (2008). Virgin Islands courts have generally declined to consider extrinsic evidence when, as here, the written terms of a contract appear unambiguous. *See, e.g., Sunshine Shopping Center, Inc. v. Kmart Corp.*, 85 F. Supp. 2d 537, 540, 42 V.I. 397 (D.V.I. 2000); *Lodge, Inc. v. Caravelle Restaurant, Inc.*, 20 V.I. 268, 279 (V.I. Super. Ct. 1984). However, "[t]o decide whether a contract is ambiguous, we do not simply determine whether, from our point of view, the language is clear . . . . Before making a finding concerning the existence or absence of an ambiguity, we consider the contract language . . . and the extrinsic evidence offered in support of each interpretation. Extrinsic evidence may include . . . the conduct of the parties that reflects their understanding of the contract's meaning." *Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir. 1993). Nevertheless, a finding that extrinsic evidence renders a contract latently ambiguous will typically defeat a motion for summary judgment and necessitate that the trier of fact resolve the ambiguity in light of the extrinsic evidence. *See CAT Aircraft Leasing, Inc., v. Cessna Aircraft Co.*, 650 F. Supp. 57, 22 V.I. 442, 445 (D.V.I. 1986). Appellate courts, however, have held that, notwithstanding a latent ambiguity, "if the court finds that a contract is ambiguous *and* that the extrinsic evidence is undisputed, then the interpretation of the contract remains a question of law for the court to

---

[10] During her deposition, Anna Clare Spenceley testified that the Lottery is responsible for the toilet under the lease agreement and that Spenceley was only responsible for the structure of the building, including pipes in the walls. (J.A. at 144; 148.)

[11] Valerie Hammoud, the Lottery's deputy director, testified that Spenceley "doesn't have the authority to clean the bathrooms." (J.A. at 74.)

decide" at the summary judgment stage. *In re Columbia Gas System, Inc.,* 50 F.3d 233, 241 (3d Cir. 1995) (emphasis added) (quoting *Lumpkin v. Envirodyne Industries, Inc.,* 933 F.2d 449, 455-56 (7th Cir.), *cert. denied,* 502 U.S. 939, 112 S. Ct. 373, 116 L. Ed. 2d 324 (1991)).

 Here, the appropriate representatives from both Spenceley and the Lottery testified that they interpreted the lease agreement as requiring the Lottery — and not Spenceley — to make repairs to the toilet. (J.A. at 144; 148). In the absence of any other extrinsic evidence, this testimony would require a court to hold, as a matter of law, that Spenceley did not possess a contractual duty to repair the Lottery's toilet. *See James v. Zurich-American Ins. Co. of Illinois,* 203 F.3d 250, 255 (3d Cir. 2000) ("Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning.") (citing RESTATEMENT (SECOND) OF CONTRACTS, § 202). However, during her deposition, Anna Clare Spenceley (hereafter "Ms. Spenceley") also testified that Spenceley repaired the ball valve in the Lottery's toilet on October 18, 2002 after receiving a repair request from the Lottery, and that the Lottery did not reimburse Spenceley for making this repair. (J.A. at 144-46.) Although Ms. Spenceley testified that this repair was done as a "courtesy to [the] Lottery," (J.A. at 144), a reasonable trier of fact could, in light of the plain text of the lease agreement, infer from the Lottery's request, Spenceley's performance of that request, and Spenceley's failure to seek reimbursement that Spenceley and the Lottery believed, notwithstanding any testimony to the contrary, that Spenceley possessed a duty to repair the toilet. Consequently, we hold that the Superior Court erred in finding that a genuine issue of material fact did not exist with respect to whether Spenceley maintained a duty to repair the toilet and other plumbing fixtures.

### D. Genuine Issues of Material Fact Do Not Exist with Respect to Notice

White further contends that the Superior Court erred in holding that Spenceley lacked notice of the condition of the toilet and the roof. Specifically, White argues that while Spenceley did not have actual notice, the trier of fact could find that Spenceley possessed constructive notice because "[t]he evidence shows that there was an ongoing and persistent problem of leaking around the base of the toilet in the bathroom, where the bowl meets the floor," (Appellant's Br. at 17

(citing J.A. 89-90; 105-06; 111; 177-78; 179; 188)), and there was "testi[mony] that there had been prior incidents of water leaking through the roof and dripping from the ceiling when it rained." (*Id.* at 18 (citing J.A. 80-81.)) We disagree.

Pursuant to section 357 of the Restatement, "[u]nless it provides that the lessor shall inspect the land to ascertain the need of repairs, a contract to keep the premises in safe condition subjects the lessor to liability *only* if he does not exercise reasonable care *after* he has had notice of the need of repairs. In any case his obligation is only one of reasonable care." RESTATEMENT (SECOND) OF TORTS § 357, cmt. d (1965) (emphasis added). *See also id.* at cmt. c ("The lessor . . . is not liable for harm caused even to his lessee for failure to make the land absolutely safe. He is liable only if his failure to do so is due to a failure to exercise reasonable care to that end."). Significantly, both case law and the illustration following section 357 clarify that a lessor only violates its obligation of reasonable care if it fails to repair the premises after possessing notice of *both* the existence of a potentially dangerous condition *and* the lessee's desire for the lessor to make the repairs. *See id.* at cmt. d, illus. 1; *Piccola v. Woodall,* 186 Ariz. 307, 921 P.2d 710, 713 n.4 (1996) (explaining that lessee notifying lessor of the need for repair is a prerequisite to liability under section 357); *Brown v. Hauge,* 105 Wn. App. 800, 21 P.3d 716, 719 (2001) (holding that landlord, while aware of condition of high doorsill, is nevertheless not liable under section 357 because tenant did not notify landlord of desire to have condition repaired).

Here, the lease agreement between Spenceley and the Lottery does not require Spenceley to inspect the premises, but only reserves Spenceley's right to make reasonable inspections at its discretion. (J.A. at 136.) Consequently, since section 357 applies to this dispute rather than sections 360 and 361, summary judgment is inappropriate only if the record contains admissible evidence that, if viewed in the light most favorable to White, would allow the trier of fact to find that Spenceley knew or should have known that the Lottery intended for it to make repairs to the toilet and the roof that may have prevented White's injuries. *Compare Sealey-Christian v. Sunny Isle Shopping Center,* 52 V.I. 410, 433 (V.I. 2009) (holding lessee not required to notify lessor of need for repairs for liability to arise under section 360) *with Piccola,* 921 P.2d at

713 n.4 (holding lessee required to notify lessor of need for repairs to be held liable under section 357).

### 1. September 4, 2004 Injury

The record does not contain any evidence that, when viewed in the light most favorable to White, could support a finding that Spenceley possessed sufficient notice of either the condition of the bathroom or a desire by the Lottery for Spenceley to repair that condition. Although White correctly notes that Ms. Spenceley testified that her workmen made repairs related to the bathroom on four occasions — October 4, 2002; October 18, 2002; July 18, 2003; and July 25, 2003 — prior to White's September 9, 2004 injury, each of these repairs was initiated only after the Lottery expressly notified Spenceley that repairs were needed. (J.A. at 142-48.) Moreover, the record indicates that none of these repairs were for the purpose of eliminating leaks from the toilet, sink, or other plumbing fixtures.[12] Significantly, Ms. Spencely, White, and Valerie Hammoud — the Lottery's deputy director who handled communications with Spenceley (J.A. at 72; 111-12; 118) — expressly testified that Spenceley had not been notified of any leaks in the bathroom or received a request that the leaks be fixed. (J.A. at 64-65; 78; 102.)

Likewise, the George, Callwood, and Webster affidavits — even if properly before the Superior Court — are insufficient to raise a genuine issue of material fact with respect to notice of the need to repair the toilet. Although both the George and Callwood affidavits state that Spenceley had sent workmen to make repairs to the bathroom in the past, (J.A. at 180; 189), neither of these affidavits explains whether any of these repairs were made for the purpose of fixing leaks, as opposed to unclogging pipes or resolving issues unrelated to what purportedly caused White's September 9, 2004 injury. While the Webster affidavit does allege that Webster "learned that one of [her] co-workers had reported [Webster's bathroom slip-and-fall] incident to . . . Magda Foy, who

---

[12] The October 4, 2002 repair pertained to clearing out a public sewer line that was connected to the premises, while the October 18, 2002 repair involved replacing the toilet's ball valve. (J.A. at 142-44.) Furthermore, the July 18, 2003 repair required Spenceley to remove, and later reinstall, the toilet bowl so that a blocked line connected to the toilet could be unclogged. (J.A. at 145.) Finally, the July 25, 2003 repair again required Spenceley to remove blockage from a sewer line. (J.A. at 146.)

immediately called Mr. Spenceley and reported the incident to him"[13] and avers that "Ms. Foy and Mr. Spenceley approached [her], asked about the incident that had just happened to [her], and asked about any injuries [she] had sustained," with "Mr. Spenceley" later "call[ing] [her] again over that particular weekend . . . to ask about the incident and how [she] was doing," (J.A. at 177-78), these statements are not sufficient for a finding that Spenceley possessed constructive notice given that, for liability to arise under section 357, it is necessary for a lessor to have notice of both the dangerous condition and the lessee desire for the lessor to repair the condition. *See Brown*, 21 P.3d at 719. Consequently, even if Spenceley was aware of a settlement of water in the bathroom, the absence of any evidence in the record indicating that the Lottery — or any of its employees — had requested Spenceley to repair the condition requires this Court to affirm the Superior Court's grant of summary judgment with respect to White's September 4, 2004 injury.

### 2. May 13, 2005 Injury

██ Similarly, the record does not contain any admissible evidence that would allow a reasonable trier of fact to find that Spenceley knew or should have known both of the existence of a roof leak and of the Lottery's desire for Spenceley to repair a roof leak. Although White implies in her appellate brief that a trier of fact could find constructive notice if it believes the allegations of the Callwood affidavit, which states that Spenceley "sent workmen to the building to work on the leaks in the roof," (Appellant's Br. at 19 (quoting J.A. at 189)), this affidavit — even if properly before the Superior Court[14] — is not sufficient to defeat

---

[13] Because this statement constitutes inadmissible hearsay evidence, *see* 5 V.I.C. § 932, it is inappropriate for this Court or the Superior Court to consider it as part of the summary judgment analysis. *See* FED. R. CIV. P. 56(e) (explaining that supporting affidavits "must be made on personal knowledge" and "set out facts that would be admissible in evidence."). Nevertheless, none of the statements in the Webster affidavit would support denying Spenceley's motion for summary judgment even if all statements were admissible at trial.

[14] The Superior Court does not discuss the Callwood affidavit in its opinion, which may imply that it had chosen to exercise its discretion to not consider the untimely submission. However, the Superior Court did not formally rule on Spenceley's motion to strike Callwood's affidavit.

summary judgment. Pursuant to Federal Rule of Civil Procedure 56(e),[15] affidavits submitted in support or opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e). Callwood's affidavit, however, fails to explain how Callwood — a janitor at the Lottery who did not interact with Spenceley — could have known that any workmen present on the roof had been sent by Spenceley at the Lottery's request, or that their role had been to repair leaks in the roof. Significantly, Callwood does not state in his affidavit that he personally witnessed Spenceley's workmen make these repairs, but simply states that "[b]efore the dates of Laverne White's injuries, the Spenceleys, the owner(s) of the Spenceley building, sent workmen to the building to work on the leaks in the roof." (J.A. at 189.) Consequently, Callwood's affidavit, at least with respect to this statement, cannot constitute admissible evidence made on personal knowledge. Accordingly, given the absence of any other evidence in the record that, if credited by the trier of fact, would demonstrate that Spenceley possessed constructive notice, this Court also affirms the Superior Court's June 11, 2008 judgment with respect to the May 13, 2005 incident.[16]

## III. CONCLUSION

We find that summary judgment is appropriate in this case with respect to both incidents because the evidence, even if viewed in the light most favorable to White, does not show that a genuine issue of material fact exists that could allow a trier of fact to properly find that Spencelely possessed constructive notice under section 357 of the Restatement. Accordingly, this Court affirms the Superior Court's grant of summary judgment to Spenceley, albeit for different reasons than articulated in the Superior Court's June 11, 2008 judgment.

---

[15] The Federal Rules of Civil Procedure apply to proceedings in the Superior Court of the Virgin Islands to the extent that they are not inconsistent with the procedural rules promulgated by the Superior Court or the Legislature. *See Phillips v. People,* 51 V.I. 258, 275 (V.I. 2009); SUPER CT. R. 7.

[16] Because a genuine issue of material fact does not exist with respect to the notice requirement, it is not necessary for this Court to consider the parties' arguments as to whether White introduced sufficient evidence with respect to whether Spenceley's failure to repair the toilet and the roof caused White's injuries.